Parrish v. The State.

HENRY PARRISH, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Criminal Law**: INSTRUCTIONS TO JURY. It is not essential to the ends of justice that the judge, in charging a jury, should rehearse the sayings of law writers as to the policy of the law in the punishment of criminals.

2. ———: ———. Instructions ought to be as few as practicable, in view of the evidence, couched in plain, simple language; and where they are, and conform to the principles and policy of the law, it is enough.

3. ——: JURY NOT THE JUDGES OF THE LAW. In criminal trials jurors are not judges of the law. While jurors have the power to disregard the law as given by the judge, they have neither a legal nor moral right to do so.

4. ——: ——. It is not error to refuse an instruction, correct in principle, where the evidence is not such as to make it applicable.

5. ——: PRESUMPTION FROM ACT DONE. It is a presumption of law, applicable in criminal trials, that a person intended to do that which he voluntarily and willfully did in fact do.

6. ——: PERSONAL CONFLICT: SELF-DEFENSE. In case of personal conflict resulting in death, in order to prove the defense of justifiable homicide, it must appear that the party killing had endeavored by all reasonable means, before giving the fatal blow, to escape from the scene of the difficulty.

7. ——: SUFFICIENCY OF PROOF. If the proof of guilt be of such moral certainty as convinces the minds of the jury, as reasonable men, beyond all reasonable doubt, it is sufficient.

8. ——: TECHNICAL ERROR. Although it may be found that detached portions of a charge are not technically correct, yet if, taking the whole charge together, the law was fairly given, and no prejudice done to the accused, the judgment will not be disturbed.

ERROR to the district court of Johnson county. Tried below before WEAVER, J.

*Appleget & Son* and *Pinero and Selby*, for plaintiff in error.

On refusal to give ninth instruction asked for, cited: *State v. Crotean*, 24 Ver., 14. 4 Broom & Hadley's Com., 631. *Fisher v. The People*, 23 Ill., 294. *Nelson v. The State*, 2 Swan, 237. *Falk v. The People*, 43 Ill., 331. Wharton's Crim. Practice, sec. 711. On refusal to give fifth instruction asked for, cited *Lyons v. The People*, 68 Ill., 271. Seventh instruction given by court was erroneous. Wharton's Ev., secs. 716, 734. Court's ninth instruction was misleading. 2 Whart. Crim. Law, secs. 1019–1021.

*C. J. Dilworth, Attorney General,* for the state, cited *Olive v. The State,* 11 Neb., 1.

LAKE, CH. J.

It is not claimed by the prisoner's counsel that the evidence was not ample to support a conviction. The only errors alleged relate to the charge given to the jury.

*First.* The refusal of the judge to give three of the instructions, the fifth, ninth, and tenth, requested for the accused.

*Second.* The giving of the seventh, ninth, tenth, and eleventh, on the judge's own motion; and

*Third.* The giving of the fifth, seventh, ninth, and tenth of those requested by the prosecution.

Of the fifth instruction, requested on behalf of the prisoner, all we care to say is, that its substance—in fact all of it except the sentimental aphorism found in some of the works on criminal law, "that it were better that ninety and nine, or any indefinite number of guilty persons, should escape, than that one innocent man should be convicted"—was all included in the instructions which were given, and a repetition was unnecessary. The criminal law abounds in such maxims equally as applicable as this, and they are usually sufficiently indulged in, and made prominent in the arguments of counsel, without reinforcement by the judge's charge. What the policy of the law is respecting the punishment of criminals, the judge ought to inform himself, and is expected to know and properly apply; but it is not essential to the ends of justice that on all occasions he should rehearse it to juries. To quote extensively in a charge the sayings of law writers, although they may be entirely correct in principle, not unfrequently tends rather to confuse than to enlighten jurymen. Instructions ought to be as few as practicable, in view of the evidence; couched in plain simple language, addressed as

they usually are to common understandings; and where they are, and conform to the principles and policy of the law, it is enough. Every step taken by the judge beyond this can do no good, but may do positive harm.

The ninth instruction requested for the prisoner was rightly refused. It was to the effect that the jury were at liberty to disregard the charge if they believed the law different from what the judge had stated it to be. Such, fortunately, is not the rule here, notwithstanding it is so held in some of the states by force of peculiar statutes on the subject. Doubtless a juror has the power to disregard the law as given by the judge, but he has neither a legal nor moral right, and violates his oath to do so. Besides, how exceedingly farcical the spectacle of a judge saying to a jury "the law of the case is as I have charged; that is the criterion by which the parties have the right to be judged, but if you think otherwise, why you may hold it to be as you like."

With such the rule, must not the administration of justice rest on a very uncertain and insecure basis? What is held to be the law in one case upon a given state of facts very likely may not be enforced as the law in another case when the facts are not materially different. And then, too, when the determination of the law of a case is left to the whims and caprices of jurymen, there is no way of knowing with certainty what they have held it to be. And thus the door is opened to the worst of abuses, without the means of locating and remedying the wrongs which are at hand where it is made certain by being embodied in a written charge of the judge.

The third request refused was that, "If the jury believe from the evidence that, but for the bleeding and trephining of Elmer Parker, he would have recovered from the wound inflicted by the prisoner, then the jury must acquit the prisoner." As a proposition of law this is doubtless correct. If it were found that the wound was not mortal

—that the death of the deceased was occasioned by the surgical operation—the prisoner was certainly entitled to an acquittal. The trouble with this instruction is, however, that the evidence did not call for its application. The united testimony of all the medical experts who gave opinions on this subject was that they considered the wound itself mortal, and that the deceased died of it. Not one of them expressed the belief that death was occasioned, or even hastened, by the surgical treatment.

Dr. Lyle, a physician of over twenty years' practice, was present when the injury was inflicted upon the deceased. In answer to—"What caused his death?" said, "I think the stone crushed the brain, and produced infusion in the brain. When we took out a piece of the skull, there was two or three ounces of blood came out, showing infusion on the brain."

Dr. Thurber was present soon after the injury; found the patient unconscious, and was of opinion he "was going to die," and that nothing could be done only to get him in an easy position and let him remain so. The breathing was "heavy and stertorous." Thought he would not have trephined him, "because it could do no good."

Dr. Chubbuck swore that he "found a fracture of the right parietal bone, with undoubted evidence of infusion of blood, and separation of the coronal suture." The pulse "was very irregular, sometimes running, as I now recollect, to perhaps ninety and one hundred, then again dropping down to thirty-five." As to the trephining, he said that, although consenting to it, "there was nothing expected to come of it," as it was believed to be "impossible for him to live."

Dr. Thurman was called later, and says he found the case to be "a fracture of the skull." As to a recovery he "thought it doubtful."

These were the medical witnesses called by the prosecution, and such was the substance of their testimony respecting the character of the wound, and its probable effect.

Parrish v. The State.

On behalf of the defendant, Drs. Fairrill and Thurber were called. Their testimony, however, does not conflict with that given for the state as to the fatal character of the injury, but is devoted almost exclusively to the subject of trephining—the propriety of resorting to it, the best mode of performing, and the chances of success in the operation —which, although somewhat interesting, threw no light upon the question in issue before the jury. Neither of these witnesses expressed the opinion that the wound given by the prisoner was not mortal, nor that the medical treatment in the remotest degree contributed to the death of the deceased. The instruction was therefore properly refused.

And in this connection it may be well to dispose of the objection to the tenth instruction, in which the judge used this language: "There has been an attempt to show that the deceased was not skillfully treated after the alleged injury," etc. This, it is claimed, gave the jury to understand that, in the opinion of the judge, unskillful treatment, although attempted, had not been shown. The instruction is open to this criticism, and had the evidence been such as would have justified the conclusion that, but for the treatment, the injury done by the prisoner would not have proved fatal, it would have been prejudicial error. As we find the evidence, however, no other reasonable conclusion was possible than that the wound inflicted by the accused was the immediate and sole cause of death.

It is also objected that in his seventh instruction the judge told the jury "that one is presumed to intend to do that which in fact he actually does do." Although rather too broadly stated for this case, the proposition is doubtless true where there are no attendant circumstances brought to light, and nothing but the naked result shown. In view of the evidence, and the whole charge which the judge gave, we are satisfied that the prisoner was not prejudiced. The kind of instrument used, the injury inflicted, and all.

the circumstances were such that the natural and probable result must have been death, or at least great bodily harm. The rule to which the judge most likely referred and intended to give is, that "a person is presumed to intend to do that which he voluntarily and willfully does in fact do." *Curry v. The State,* 4 Neb., 545. Here, however, there is not even the shadow of a doubt that the blow was both voluntarily and willfully given, so that, although not strictly correct, the instruction could have produced no injury.

The ninth and eleventh instructions were excepted to on the ground of their being misleading. The objection is untenable. The ninth, after a brief but fair reference to the leading facts of the case, tells the jury that the circumstance of the deceased having thrown a stone at the prisoner, would not justify the latter "in making the assault in the manner as charged in the indictment," if it were found that "at the time of the alleged assault" the deceased, having left the scene of their former trouble, was on his "way home, and not in the pursuit of difficulty." And by the eleventh, the jury were told that the term "reasonable doubt" implies neither an "imaginary" nor a "possible doubt," but such a condition of the mind that, "after a careful and full examination of all the facts," they could not say they "had an abiding faith in the truth of the charge" against the prisoner. We see nothing in these instructions to complain of, and pass them without further comment.

Complaint is made also of the fifth instruction given at the request of the prosecutor. It was in substance that it was "no justification of a homicide resulting from an affray which the defendant commenced; that when it was committed, he, the defendant, was acting on the defensive." In view of the evidence, which showed beyond all reasonable doubt that the deceased was retreating and endeavoring to escape from the crowd, of which the prisoner was one, by which he and his father were followed and beset

Parrish v. The State.

when the fatal blow was given, this instruction was not inappropriate.

There is nothing in the evidence that tends even to bring the prisoner's case within the principle of justifiable homicide in self-defense. In cases of personal conflict resulting in death, in order to prove this defense, it must appear that the party killing had endeavored by all reasonable means, before giving the fatal blow, to escape from the scene of the difficulty. Here it is not pretended that this was done, but on the contrary he followed up, and as it were, pushed the deceased to the wall and killed him.

The ninth instruction given on behalf of the prosecution was not strictly applicable, inasmuch as there were "explanatory circumstances" respecting the killing before the jury, and had the conviction been of murder in the second degree, it is possible that the giving of it would have been cause for a new trial. The error of this instruction was in its suggestion of the possible want of any such "circumstances," when in fact there were many of them, as would lower the homicide to the grade of manslaughter. But the conviction being of manslaughter only, the error was not prejudicial, and therefore no cause for reversing the judgment.

There is no error in the tenth instruction given for the state. It was simply this: "that although the proof may not be unequivocally and absolutely certain," yet if it "be morally satisfactory and convincing, this is all that the law requires." As we have already said, absolute demonstration or mathematical certainty is not required. If the proof of guilt amount to a moral certainty, or such a moral certainty as convinces the minds of the tribunal, as reasonable men, beyond all reasonable doubt, it is sufficient. 3 Greenleaf on Ev., sec. 29. Looking to the entire charge bearing upon the question of the sufficiency of the evidence, we are convinced that the law was correctly given.

JUDGMENT AFFIRMED.