CITY OF LINCOLN, PLAINTIFF IN ERROR, V. JESSE B. HOLMES, DEFENDANT IN ERROR.

1. **Municipal Corporation:** DEFECTIVE SIDEWALK: TRIAL: NEWLY DISCOVERED EVIDENCE AFTER VERDICT. Where, in an action to recover damages against a city for injuries occasioned by a defective sidewalk, a verdict was returned in favor of the plaintiff for the sum of $3,500, which verdict on the motion of the city, supported by affidavits of parties who came forward after the verdict and stated that they were present at the time of the accident, and that the plaintiff did not fall on the sidewalk at the time stated as claimed, and therefore was not injured thereby, was set aside, *Held*, That the newly discovered evidence was not cumulative, and that the court was justified in setting the verdict aside.

2. **Instructions** asked must be applicable to the testimony, and where an instruction upon a given point has once been fairly given it should not be repeated, as it gives it undue prominence.

ERROR to the district court for Lancaster county. Tried below before MITCHELL, J.

*Allen W. Field* and *Lamb, Ricketts & Wilson*, for plaintiff in error.

*Snelling & Talbot*, for defendant in error.

MAXWELL, CH. J.

This action was brought by the defendant against the plaintiff to recover damages for injuries sustained by falling into a hole in a sidewalk on P street in said city in October, 1882. The questions presented as stated in the abstract of the pleadings are as follows:

" The petition claims that the defendant is a corporation, among other duties charged with the control, and keeping in good condition and repair, the streets of the city of Lincoln; that on or about October 1st, 1882, P street was a common thoroughfare of the city, and that at and long prior to that date the said P street, between 12th and 13th, opposite block 37, was out of repair, the sidewalk being broken, and there being pitfalls and irregularities, which the defendant knew and suffered, without repairing the same or there placing any light or signal to indicate the dangerous condition; that on or about the first of October, 1882, the plaintiff (defendant in error), on the evening named, lawfully traveling on the street and unaware of the danger, and without his negligence, was precipitated into the hole named, and received great bodily injury, by the which he has been kept in bed and detained from business about a year and eleven months, has spent about $1,000 in medical attendance and nursing, and has been permanently crippled to his damage in $10,000, for which he prays judgment and costs of suit."

The defendant answering, admits the due incorporation

of the city, but denies each and every other allegation in the petition, and says, if the plaintiff sustained injury it was by his own negligence and fault, and not by reason of the fault or negligence of the defendant.

In reply the plaintiff denies all allegations of new matter in the petition.

At the February, 1885, term of the district court of Lancaster county the case was tried and a verdict rendered in favor of Holmes for the sum of $3,500. This verdict, for cause to be hereafter stated, was set aside, and a new trial awarded. On the second trial Holmes recovered the sum of $950, upon which, after overruling a motion for a new trial on behalf of the city, judgment was rendered. The city now brings the cause into this court by petition in error.

The defendant also has filed a cross petition in error alleging error in setting aside the verdict for $3,500, upon the ground of newly discovered evidence. The affidavits filed on the hearing of that motion tend to show that on the night of September 30th, 1882, Susan B. Anthony delivered a lecture at the opera house in Lincoln; that the defendant and his wife attended the lecture. To this point all the affidavits agree, but three of the affiants swear that they were following close behind the defendant and his wife on their return home, and that the defendant did not fall at the place indicated in the sidewalk, but the defendant's wife did. One of them states that " Dr. Jesse Holmes (the defendant) did not fall. Dr. Holmes assisted his wife to rise, that affiant and her sister were so close upon Dr. Holmes and his wife that she stepped upon her dress before she could stop; that affiant asked if she could assist them; that Holmes and his wife immediately preceded affiant and her sister and passed up Q street to their home."

Two other persons swear to substantially the same facts. Holmes, his wife, and son swear positively that the injury occurred as stated in the petition, thus making a direct conflict in the testimony as to whether or not the defendant

had been injured at that place. This testimony was proper to be submitted to the jury as tending to contradict that of the defendant and his wife given on the trial of the case, and was not cumulative, as no testimony had been given on that point on behalf of the city in the first trial. There was no error therefore in setting the verdict aside and granting a new trial. It is evident, from reading the affidavits, that some of the parties were in error—a case of mistaken identity, perhaps.

2. There is a very large amount of testimony in the record, and, except on the point as to the cause of the injury, there is but little conflict. That the sidewalk at the point indicated was in an unsafe and dangerous condition all the testimony tends to show. The nature of the injury and its cause as claimed by Holmes was given in his direct examination, which is as follows:

" Name, Jesse B. Holmes, 71st year, residence 1634 Q street, Lincoln, on the last of Oct., or first of Nov. 1882, was returning home from lecture of Susan B. Anthony at Opera House, was on north side P st., bet. 12th and 13th, the walk was defective from broken boards, some were absent making a place, say the width of a board. It was about 10 o'clock, and the night was disposed to be a little drizzly. Cannot say positively. I do not think there were lights on the street. Only my wife was with me. I had passed over the street before, but cannot say when. It was on my road from the city home. I could not distinguish the walk, but suppose by close inspection I could have seen a defect, but didn't notice it. I had been in the habit of going down town, but mostly in my buggy, and so was not so familiar with the walk. After the lecture my wife and I had stayed to speak to the lady, whom we had known before, and so were later than we would have been. My wife and I were by ourselves. I stepped into the place, also my wife—I across the walk, and she forward a little. I was hurt a good deal, and found an impedi-

ment in rising. After a little my son Jesse came up, and with his help and wife's I came home. I think the hole was the ordinary width of a sidewalk board, and half a leg deep. I felt the effects in my back and hips—cannot say in which first. I got better for a little while, so with help I could get in my buggy and ride down town, but at street crossings the jerk would hurt me. Pretty soon there came on a kind of inflammatory condition, which passed off, and left me more helpless than before. That was contrary to my anticipation, and I observed then I would be subject to severe pain in hips and back. I have practiced medicine about thirty years. I sent for Dr. Carter to come as a matter of professional etiquette. He visited me several times within a week or two. By his aid I got better. In talking afterwards with him he said there had been some rheumatism. Dr. Carter went to Ohio, so I called in Dr. Robbins who visited me occasionally, and calls to the present time to see how I thrive. Drs. Fuller and Chapin had had a consultation and examination of me, and prescribed. Dr. Dayton and other physicians called in, but not on an occasion of that kind. Gradually I lost use of my limbs. They were useless for a while, and now I can only draw them up a little. For a long time my general health was impaired, but I would eat as much as a person of my age, and taking the exercise I did, ought. The upper lumbar and lower dorsal vertebra were affected. Up to the injury my general health was good—I was robust for my age. At first here I did not practice, but I resumed practice, and when the injury occurred I estimate my income at $100 a month. Aside from physicians named I have had liniment from Mr. Leighton, and Dr. Maxwell came for months daily, in 1883, and rubbed me. I guess two months or six weeks after accident I called in a physician, and up to that time I had applied plasters, liniment, and other ointments.

Q. You said this opening you fell in was about the

width of a plank, of some depth—did you observe at that time any other openings along in the vicinity of this place?

Excepted to as incompetent, immaterial, and irrelevant.

A.    My impression is—I seem to have a general impression of other openings along there.

My impression is I must have passed the place going to the lecture, but I cannot say.  Cannot say whose property the place was opposite; my impression is there was a fence along there.    For a considerable time after the injury I was able to get in and out of my buggy with help, and get around to visit one or two patients; and immediately after the hurt I was able to go with crutches round the house a little, but when I was taken with the fever attack I was not able to move for a while.    That was perhaps from a week to ten days after the injury.    I have not been off my bed, except lifted off on sheets, to have it made, for about two years.    Since the injury I do not suppose I have been able to get around on crutches even for a month."

The court on its own motion gave the following instructions, to each of which the plaintiff herein excepted:

1.  The plaintiff alleges in his petition that on or about the first day of October, 1882, while walking along and upon the said walk of the defendant on " P " street, between 12th and 13th streets in the city of Lincoln, and while exercising ordinary care for his personal safety he fell and received injury to his person and suffered damages; that said injury was received and the damages so suffered were on account of and by reason of the defective, unsafe, and dangerous condition of the sidewalk complained of.

The defendant by its answer puts all these allegations in issue, and the plaintiff must prove them all by a preponderance of the testimony before he will be entitled to a verdict at your hands.    If he does so prove them you should allow him reasonable and just compensation for the damage so sustained by him, resulting from the injury so received.

2. Under its charter and under the law it is and was the duty of the city of Lincoln to keep and maintain the sidewalk complained of and at the point in question in a reasonably safe condition for travel by the ordinary and usual modes, and if the plaintiff while passing over in the usual mode, using ordinary care for his personal safety, received personal injury and suffered damage on account of defendant's neglect of that duty, you should find for the plaintiff.

3. Ordinary and reasonable care required of plaintiff is that degree of care which might reasonably be expected from an ordinarily prudent person under the circumstances surrounding him at the time.

If you should find from the evidence that at the time and prior thereto plaintiff knew of the defective and dangerous sidewalk, and where it was located, he was required to use more care than if he had not such knowledge, and if he neglected to do so and such neglect contributed to the injury, he cannot recover; but if he did use more than he would be required to do in case he had no such knowledge and was injured by reason of defendant's neglect, and no fault of plaintiff contributed to the injury, you should find for the plaintiff.

4. If you find from the evidence that the sidewalk in question was in a defective or unsafe condition at or before the time of the occurrence and the city authorities had knowledge or were notified of that fact, it was their duty to repair it without unnecessary delay, and if they failed or neglected to do so, and the injury, if any, resulted on that account, was the consequence of such neglect and no fault of plaintiff contributed to the injury, you should find for plaintiff.

5. Actual knowledge in all cases need not be proven, but may be inferred if the defective and unsafe condition of the sidewalk is open and notorious and continued for a length of time in which and within which the city authorities in

the exercise of reasonable diligence and care, in their reasonable supervision over the streets, the city would be liable just as in cases of actual notice.

6. If you find from the evidence and these instructions that the plaintiff is entitled to recover, it will be your duty to fix and ascertain from the evidence the amount to which he is entitled; you should carefully examine all of the evidence as to the nature, character, and extent of the injury, and the result, whether the disability, if any, resulted from the injury was permanent or temporary; its extent, whether total or partial; if any permanent disability resulted you should consider plaintiff's age, his reasonable expectancy of life, how much money he could earn as he was before the injury, how much, if any, he could earn with his reduced capacity, if any there was on account of the injury, remembering that no reduction of capacity on any other account is to be considered, and allow him a reasonable compensation for any loss of time and capacity resulting from the injury. You should also allow him for his suffering. The law lays down no rule for estimating of his damages on this account, but leaves it to your sound judgment, and you should allow him such amount as in your best judgment would be just and right under the circumstances, not exceeding in all the amount claimed—$10,-000.00.

7. You are the sole judges of the credibility of the witnesses and the weight of the testimony. In the consideration of these questions you have a right to consider the interest of the witnesses, their manner and conduct upon the stand, their means of knowledge about the things about which they undertake to testify, the probability or improbability of their being mistaken, the circumstances with which the parties were surrounded, whether it was a dark night, and the opportunities for correct and reliable observation, and all other circumstances that can in any way assist you in coming to a just conclusion, and give

such credit to the witnesses and such weight to the testimony as you may think they ought to have.

No particular objection is pointed out in these instructions, and in our view, they state the law correctly. On behalf of the city, fourteen instructions were asked, and all of them refused, and this refusal is now assigned for error.

We think the court did not err in refusing to give the instructions asked; a number of them are not predicated upon the testimony, and others a mere repetition of those already given by the court, and the whole well calculated to divert the attention of the jury from the main issues in the case, viz: the defective sidewalk and the injury, if any, to Holmes, the defendant.

In *Parrish v. State*, 14 Neb., 60, it was held that instructions should be, as far as practicable, in view of the evidence, couched in plain, simple language; and where they are, and conform to the principles and policy of the law, it is enough; and in *Fitzgerald v. Morrisey*, 14 Neb., 198, it was held that the very large number of instructions asked by the defendant was properly refused, as such portions of them as had not previously been given by the court, on its own motion, were not applicable to the testimony. The same rule applies in this case.

The questions of fact were properly submitted to the jury, and they having weighed the testimony, and found in favor of the defendant in error, we see no reason for disturbing the verdict. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.