## MARTIN J. O'GRADY v. STATE OF NEBRASKA.

FILED MARCH 1, 1893.    No. 5652.

1. **Criminal Law**: INSANITY FROM INTOXICATION: EXCUSE FOR CRIME: EVIDENCE. Intoxication is no justification or excuse for crime; but evidence of excessive intoxication by which the party is wholly deprived of reason, if the intoxication was not indulged in to commit crime, may be submitted to the jury for it to consider whether in fact a crime had been committed; or to determine the degree where the offense consists of several degrees.

2. **Instructions** set out in the record should be qualified as above.

ERROR to the district court for Johnson county. Tried below before BABCOCK, J.

*Daniel F. Osgood*, for plaintiff in error.

*George H. Hastings, Attorney General*, for the state.

MAXWELL, CH. J.

The plaintiff in error was convicted of attempting to pass a forged check and was sentenced to imprisonment in the penitentiary for two years. All the testimony in the case upon that point tends to show that the plaintiff in error was intoxicated at the time, and the question presented is to what extent, if at all, excessive drunkenness not entered into for the purpose of committing crime may be considered by the jury in determining the intention of the accused. The court instructed the jury: "The jury are instructed that voluntary intoxication or drunkenness is no excuse for a crime committed under its influence, nor is any state of mind resulting from drunkenness, short of actual insanity or loss of reason, any excuse for a criminal act. Where without intoxication the law would impute a criminal intent, proof of drunkenness will not avail to disprove

such intent where the drunkenness is voluntary." It will be observed that the instruction contains two propositions, viz., that drunkenness is no excuse for crime unless it produces actual insanity or loss of reason, and, second, that where the intoxication is voluntary, proof of intoxication cannot be considered to disprove intent. The rule as stated in the second part of the instruction, being without qualification, is too broad. While it is true that intoxication is not a justification or excuse for crime it is also true that at the present time evidence of intoxication may be admitted to determine whether or not a crime has been committed or where it consists of several degrees depending on the intent, the grade of the offense.

*Cline v. State*, 43 O. St., 334, 335, which in our view states the law correctly, is as follows: " Where a person having the desire to do to another an unlawful injury, drinks intoxicating liquors to nerve himself to the commission of the crime, intoxication is held, and properly, to aggravate the offense; but at present the rule that intoxication aggravates crime is confined to cases of that class. The rule is well settled that intoxication is not a justification or an excuse for crime. To hold otherwise would be dangerous to and subversive of public welfare. But in many cases evidence of intoxication is admissible with a view to the question whether a crime has been committed, or where a crime consisting of degrees has been committed, such evidence may be important in determining a degree. Thus, an intoxicated person may have a counterfeit bank bill in his possession for a lawful purpose, and intending to pay a genuine bill to another person may, by reason of such intoxication, hand him the counterfeit bill; as intent in such case is of the essence of the offense, it is possible that in proving intoxication you go far to prove that no crime was committed. (*Pigman v. State*, 14 Ohio, 555.) So where the offense charged embraces deliberation, premeditation, some specific intent, or the like, evidence of intoxication

24

may be important, and it has frequently been admitted. (Id.; *Nichols v. State*, 8 O. St., 435; *Davis v. State*, 25 Id., 369; *Lytle v. State*, 31 Id., 196.) The leading case of *Pigman v. State* has been repeatedly cited with approval (*People v. Robinson*, 2 Park., 235; *People v. Harris*, 29 Cal., 678; *Roberts v. People*, 19 Mich., 401; *State v. Welch*, 21 Minn., 22; *Hopt v. People*, 104 U. S., 631; *State v. Johnson*, 40 Conn., 136), and no doubt the law upon the subject is correctly stated in that case, and that the rule as there expressed is humane and just, but there is always danger that undue weight will be attached to the fact of drunkenness where it is shown in a criminal case, and courts and juries should see that it is only used for the purpose above stated, and not as a cloak or justification for crime. See, also, *U. S. v. Drew*, 5 Mason, 28; s. c., 1 Lead. Crim. Cas. [2d ed.], 131, note; *Reg. v. Davis*, 14 Cox, C. C., 563; s. c., 28 Moak Eng. Rep., 657; note, Lawson on Insanity, 533-768, where all the cases are collected relating to the admissibility and effect in criminal cases of proof of intoxication."

Drunkenness is not favored as a defense, and in *Johnson v. Phifer*, 6 Neb., 402, this court held that it could not relieve a party from a contract on the ground that he was drunk when it was entered into unless his condition reached that degree which may be called excessive drunkenness, where a party is utterly deprived of reason and understanding. This, in our view, is the true rule. As much as we may desire to discourage drunkenness, and deplorable as the habit of drinking, with its train of wrecks and ruin, may be, we must still recognize the frailty of human beings, and adapt the law to the actual condition of the party.

In *Pigman v. State, supra,* it is said: "The older writers regarded drunkenness as an aggravation of the offense and excluded it for any purpose. It is a high crime against one's self, and offensive to society and good morals; yet

every man knows that acts may be committed in a fit of intoxication which would be abhorred in sober moments. And it seems strange that any one should ever have imagined that a person who committed an act from the effect of drink which he would not have done if sober, is worse than the man who commits it from sober and deliberate intent. The law regards an act done in sudden heat, in a moment of frenzy when passion has dethroned reason, as less criminal than the same act when performed in the cool and undisturbed possession of all the faculties. There is nothing the law so abhors as the cool, deliberate, and settled purpose to do mischief. That is a quality of a demon; whilst that which is done on great excitement, as when the mind is broken up by poison or intoxication although, to be punished, may to some extent be softened and set down to the infirmities of human nature. Hence, not regarding it as an aggravation, drunkenness, as anything else showing the state of mind or degree of knowledge, should go to the jury. Upon this principle, in modern cases, it has been permitted to be shown that the accused was drunk when he perpetrated the crime of killing, to rebut the idea that it was done in a cool and deliberate state of the mind necessary to constitute murder in the first degree. The principal is undoubtedly right. So, on a charge of passing counterfeit money; if the person is so drunk that he actually did not know that he had passed a bill that was counterfeit, he is not guilty. It oftentimes requires much skill to detect a counterfeit. The crime of passing counterfeit money consists of knowingly passing it. To rebut that knowledge, or to enable the jury to judge rightly of the matter, it is competent for the person charged to show that he was drunk at the time he passed the bill. It is a circumstance, among others, entitled to its just weight."

If he was so drunk as to be deprived of reason and understanding, that is a fact for the jury to consider with the other facts proved, in determining the guilt or innocence of

accused. The judgment is reversed, and the cause re-manded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.