## JAMES J. REED v. STATE OF NEBRASKA.

FILED JANUARY 18, 1906.   No. 14,206.

1. **Criminal Law:** INFORMATION: NAMES OF WITNESSES. The main purpose of the requirement that the names of the witnesses be indorsed on the information in a criminal action is to convey to the accused the information or knowledge of the identity of the witnesses to be produced on behalf of the state; and, although a witness is designated on the information by the wrong christian name, if the accused is not misled thereby, and is aware of the identity of the witness, such mistake affords no ground for the exclusion of his evidence.

2. **Trial:** HARMLESS ERROR. Where an objection to a question propounded to a witness is sustained, and the testimony sought to be elicited by such question is brought out by the one succeeding it, such ruling, if erroneous, is error without prejudice.

3. **Insanity** cannot be proved by hearsay or reputation, and it is proper to exclude such evidence.

4. **Nonexpert Evidence.** The rule permitting nonexpert witnesses to testify as to the sanity or insanity of one whose legal accountability is the sole matter in issue does not allow such witnesses to testify that at a certain date such party knew the difference between the right and wrong of the act at that time committed by him. *Shults v. State,* 37 Neb. 481.

5. **Instructions.** It is not the true method of construing instructions to select detached portions thereof and consider them as independent of the whole of the charge to the jury. The correct rule of construction is that all that is said in the entire charge upon any one question shall be construed together, and if, when so construed, it is not inconsistent as a whole, and states the law correctly, no valid assignment of error can be predicated thereon.

6. **Self-Defense:** INSTRUCTION. Self-defense is extended to the defense of the person and of the domicile, and an instruction which correctly defines the elements of such defense is a sufficient charge on that subject.

7. **The** opinions of nonexpert witnesses on the question of the insanity of one charged with a criminal offense are entitled to little or no regard, unless supported by good reasons founded on facts which warrant them. From such opinions and the facts stated to support them, it is the province of the jury to draw their conclusions as to the sanity or insanity of the defendant.

8. **Homicide:** SELF-DEFENSE: INSTRUCTION. An instruction in this case, by which the jury were told that if they believed from the evidence that the deceased and the accused were engaged in a scuffle, and while so engaged the revolver was accidently discharged and thus inflicted the wounds which caused her death, they should find the defendant not guilty, *held* to be as favorable to the defendant, on that question, as the evidence warranted.

9. **Instructions.** Where the court on his own motion has correctly instructed the jury on all the issues presented by the record and evidence in a criminal case, it is not error to refuse to give the instructions requested by the defendant.

10. **New Trial:** JUROR: COMPETENCY. Where, by a supplemental motion for a new trial, the competency of a juror, on account of an alleged bodily infirmity, amounting to a disability, is put in issue, and is determined as a matter of fact upon competent evidence introduced before the trial court, the finding of the fact on that question will not be set aside by a court of review, unless it is unsupported by the evidence and is clearly wrong.

11. **Juror:** COMPETENCY: WAIVER. In a criminal action where, after trial and conviction, the competency of a juror is challenged for the first time, on the ground that he has been convicted of a felony and served a term in the state penitentiary, the fact that counsel for the accused failed to examine the juror and ascertain his incompetency in that respect, full opportunity therefor having been accorded him, will amount to a waiver of such objection.

ERROR to the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Cunningham R. Scott* and *E. H. Scott,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

BARNES, J.

James J. Reed, on a trial in the district court for Douglas county, was convicted of the crime of murder in the first degree for the killing of one Glenna Hynes, and was sentenced to the penitentiary for life. From that judgment and sentence he prosecutes error to this court, and will hereafter be called the accused.

His first contention is that the trial court erred in admitting the evidence of Darwin P. Baldwin, a witness for the state, because the name of said witness was not indorsed on the information.   It appears that the real name of the witness was Darwin P. Baldwin instead of Daniel P. Baldwin, the name by which he was designated on the information.   It further appears that this witness had been a police officer in the city of Omaha for something like 14 years before the information herein was filed; that he was known among his brother police officers, and his associates and acquaintances, as "Dan. P. Baldwin," and this was the reason why his name was thus indorsed on the information.   There was no mistake as to the identity of the witness, and the accused in speaking of him during the trial invariably called him "Dan Baldwin."   It is apparent that the mistake in the name of the witness did not mislead the accused, or prevent him from knowing who the witness was that would testify against him.   Section 579 of the criminal code provides that the prosecuting attorney shall indorse on the information the names of the witnesses known to him at the time of filing the same; and, at such time before the trial of any case as the court may by rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him.   The reason for the rule requiring the names of the witnesses to be indorsed on the information in a criminal action is to advise the accused of the identity of the witnesses who will be called to testify against him, and to enable him to intelligently prepare for his defense.   It is apparent from the record that the accused was not misled

in any way by the indorsement of the name "Daniel P. Baldwin" on the information, in lieu of the name of "Darwin P. Baldwin." In the case of *Carrall v. State,* 53 Neb. 431, the name "Mrs. Fred Steinburg" was indorsed on the information. It appeared that the name of her husband was not "Fred Steinburg," but was in fact "Paul Fred Steenburg." It was objected that the true name of the witness was not indorsed on the information. The court said:

"The evidence disclosed that the husband was known as 'Fred Steenburg' and the wife, in her testimony, when being interrogated directly on this point, stated that her name was 'Mrs. Fred Steenburg,' from which it appears that the indorsement on the information was of her a sufficient identification, one which met the purpose of the statute, notwithstanding the law does not recognize a second or other than first christian name. This appellation 'Fred' was that by which the husband was known and identified, and it indicated the wife when applied to her in the manner of its indorsement with the other name and term on the information."

So we conclude that, where the name indorsed on the information fairly identifies the witness, and the accused is not misled or taken by surprise on account of a mistake in the christian name, it is not error to receive the evidence of such witness.

Counsel for the accused also contends that the court erred in sustaining the objection to a question put to witness Oliver Cowing. It appears from the record that this witness was being examined by counsel as a nonexpert witness on the question of insanity. The question asked was as follows: "How was it about his conversation being connected or otherwise?" This question was objected to by the state on the ground that it was leading, and the objection was sustained. If this ruling was incorrect, the error was cured by the question and answer which followed. The witness was next asked: "Now, I will ask you to go on in your own way and state everything that you ever saw

about the man during the time you knew him before the homicide and up to the homicide that attracted your attention, and tell why it attracted your attention." This question was answered at length by the witness with-. out objection. We quote a part of the answer as follows: "He generally talked with some of the employees of the shop that boarded there, and he always appeared to me like he was irritated and quick, and gave quick answers, and his brow would contract, and have a peculiar expression on his face, and would probably leave off the conversation abruptly and turn round and walk out of doors. I noticed that several times." It thus appears that counsel obtained the evidence he sought to elicit by the question objected to. Therefore the ruling in no way prejudiced the rights of the accused.

It is next urged that the court erred in sustaining the objection to the following question which was propounded to the witness Peter Goos: "Now, I will ask you to state what you know, if anything, about the subject of his derangement being the subject of common conversation among the people at the hotel." We think the objection was properly sustained. This witness was also called by the defendant as a nonexpert on the question of insanity. By the question asked counsel attempted to prove insanity by hearsay, or reputation. Insanity cannot be proved in this manner. "Hearsay or reputation of being insane is not admissible." 2 Bishop, New Criminal Procedure (4th ed.), sec. 687a; *Aschraft v. De Armond*, 44 Ia. 229; *Yanke v. State*, 51 Wis. 464.

The accused further contends that the court erred in sustaining the state's objection to the evidence of the witness W. H. Anderson. This assignment presents the question just discussed in relation to the testimony of Peter Goos; and therefore will receive no further consideration. It is claimed that the witness B. B. Smalley should have been permitted to answer the following question: "Now, then, I will repeat my question: Taking that into account, and his manner, and what you have seen of other insane per-

sons, what would be your opinion as to his condition as to his being able, of his own will, and his own mind, to determine right from wrong?" This question was before this court in *Shults v. State*, 37 Neb. 481, where the rule was stated as follows:

"The rule permitting a nonexpert witness to testify as to the sanity or insanity of a party whose legal accountability is the sole matter in issue does not allow such witness to testify that at a certain date such party knew the difference between the right and wrong of an act at that time committed by him."

So it would seem that the court correctly excluded the testimony sought to be elicited by the question quoted above.

The foregoing necessarily disposes of all of the other assignments of error relating to the admission and exclusion of evidence, and therefore they will be given no further attention.

This brings us to the assignments of error relating to the giving of instructions. The sixth paragraph of the instructions, given by the court on his own motion, reads as follows: "To constitute murder in the first degree there must have been an unlawful killing done, purposely and with deliberate and premeditated malice. If the person has actually formed the purpose maliciously to kill, and has deliberated and premeditated upon it before he performs the act, and then performs it, he is guilty of murder in the first degree, however short the time may have been between the purpose and its execution. It is not time that constitutes the distinctive difference between murder in the first degree and murder in the second degree. An unlawful killing with malice, deliberation and premeditation, constitutes the crime of murder in the first degree. It matters not how short the time, if the party has turned it over in his mind and weighed and deliberated upon it." This instruction is vigorously assailed by counsel for the accused, who claims that it contains an incorrect definition of murder in the first degree. At

first blush it would seem as though the point was well
taken; but after a careful reading of the whole thereof,
in connection with the other parts of the court's charge
to the jury, we are constrained to hold the instruction
good. Counsel, in order to establish his contention, segre-
gates a part of the paragraph complained of, and, reading
it without reference to the rest of the instruction, claims
that it is erroneous. It is not the true method of con-
struing instructions to select detached portions thereof
and consider them as independent of the whole of the
charge to the jury. The correct rule of construction, and
the one universally followed by this court, is that all that
is said in the entire charge upon any one question shall
be construed together, and if, when so construed, it is not
inconsistent as a whole, and states the law correctly, no
valid assignment of error can be predicated thereon. *St.
Louis v. State,* 8 Neb. 405; *Parrish v. State,* 14 Neb. 60;
*Murphy v. State,* 15 Neb. 383; *Carleton v. State,* 43 Neb.
373. In the case last above cited, in one of the paragraphs
of the instructions, the court said: "It is sufficient if there
was such design and determination to kill distinctly
formed in the mind at any moment before or at the time
the blow is struck or the fatal shot is fired." It was con-
tended that this was not a correct statement of the law.
But we held that while the language quoted, if it stood
alone, might be ambiguous and objectionable, yet, when
construed with the rest of the charge, it was not errone-
ous. It was said: "We do not think the jury could have
been misled or confused thereby." The precise point con-
tended for by counsel for the accused is that the instruc-
tion eliminates the element of purpose. In other words,
that it does not inform the jury that the killing must be
purposely done. An examination of the paragraph dis-
closes that the word "purposely" is contained in the first
sentence thereof; and after stating, in the second sentence,
that if a person "has actually formed a purpose mali-
ciously to kill," the court proceeded to define deliberation
and premeditation, and in giving such definition the part

of the charge excepted to appears. We take it that the jury could not have been misled by the language of this instruction, even when considered by itself. But an examination of the record discloses that the court had previously given an instruction correctly defining the crime of murder in the first degree, and specifically setting forth every element thereof. It further appears that, in the paragraph immediately following the one complained of, the court told the jury what was meant by the word "purposely." We quote from the instruction, as follows: "To do an act purposely is to do it designedly, intentionally, with a will. * * * A design or purpose must be formed to kill willfully, that is, with the intention that the act to be done shall have the effect of taking the life of a human being, and some space of time, it matters not how short, must intervene between the formation of the purpose or design to kill and its execution." So it would seem that the jury must have understood what facts constitute murder in the first degree.

The correctness of the seventh paragraph of the instructions is also challenged by counsel, for the reason that it does not inform the jury that a person attacked has a right to use such force as is necessary to prevent an attempted robbery, or great personal injury. This paragraph of the instructions does not undertake to cover the entire case, but only a portion thereof, and it appears that the question of self-defense was properly covered by a separate paragraph of the instructions. Again, it is contended that the instruction is erroneous because it ignores the right of the accused to form an intention to take the life of the deceased in defense of his property. Self-defense is extended, to the defense of the person and of the domicile. Intentional homicide may not be justified completely beyond this scope. 1 Bishop, New Criminal Law, sec. 867. The foregoing discussion practically covers all of the objections to paragraph seven.

Counsel also challenges the correctness of paragraph 14 of the instructions, which defines the elements of self-de-

fense.   It is sufficient to say, in answer to this contention, that the instruction complained of correctly states the law on that subject as laid down by the text-writers, and approved by many decisions of this court.   To quote the instruction and comment further on it would render this opinion much too long.

Counsel complains of paragraph 16 of the instructions which defines the law relating to the defense of insanity. His contention is that the court erred in informing the jury that, in determining what weight should be given the opinions of the witnesses on that question, they should consider the nature and character of the acts, the circumstances surrounding the transactions and the conduct of the defendant, as described by the witnesses, and whether or not they indicated a sane or insane condition of the mind, or whether they gave no indication either way; that in determining that question the jury should consider all the acts and conduct of the defendant and the circumstances concerning the same, as detailed by the witnesses, together with all of the other evidence in the case, and, from such testimony, give to the opinions of the nonexpert witnesses such weight as they should think they were justly entitled to.   It is said that this was error, because the court, in the first instance, was required to determine the admissibility of the nonexpert evidence, and the consequent right of the witnesses to express an opinion on the question of the insanity of the accused, as a matter of law; and that the jury had no right to consider the basis of such opinions.   We conceive the true rule to be that the opinions of nonexpert witnesses on the question of insanity are entitled to little or no regard, unless supported by good reasons founded on facts which warrant them.   From the facts stated in support of such opinions, the jury must draw their conclusions as to the sanity or insanity of the defendant.

Lastly, paragraph 17 of the instructions is complained of.   By this instruction the jury were told that if they believed from the evidence that the deceased and the ac-

cused were engaged in a scuffle, and while so engaged the revolver was accidentally discharged and thus inflicted the wounds which caused her death, they should find the defendant not guilty. We believe that this instruction was as favorable to the defendant as the evidence warranted.

On the trial in the district court counsel for the accused requested the court to give certain instructions to the jury comprising paragraphs one to eleven, inclusive. The court declined to give them, for the apparent reason that he had covered all of the questions at issue by his own instructions. While it is true that the language contained in the instructions given by the court is not as fervid or emphatic as that contained in the instructions asked for, yet we are satisfied from an examination of the record that every legal proposition involved in the case was covered by the instructions of the court. Therefore, it was not error to refuse those requested by counsel for the accused.

This brings us to the questions presented by the supplemental motion for a new trial, to wit, the competency of the jurors Blake and Baker. It was alleged in the supplemental motion that the juror Blake was blind, and was therefore not qualified, under the statute, to act in that capacity. The statute reads as follows: "All free white males residing in any of the counties of this state * * * and not being subject to any bodily infirmity amounting to a disability, are competent jurors." (Code, sec. 657.) The question thus raised was one of fact, and was determined adversely to the accused on the hearing in the district court. An examination of the evidence discloses that while the juror's eye-sight was somewhat impaired, yet he was able to go about the city of Omaha unattended, without stumbling or falling, and without danger of injury to himself; that he was able to distinguish persons at a considerable distance, to recognize his acquaintances and friends; in fact, could see well enough across an ordinary sized room to see an uplifted hand and

determine the number of fingers that were shut or that remained open.  The court found the juror competent, as a question of fact, and we are not at liberty to determine otherwise.  This finding by the court must be treated the same as any other finding of fact, and a court of review will not set it aside unless it is unsupported by the evidence and is clearly wrong.  Again, counsel on the examination of the juror, as to his competency, had an opportunity to observe his physical condition, and a failure to examine him and ascertain whether or not he was suffering from any bodily ailment or unsoundness amounts to a waiver of his present objection, and he should not be permitted to urge it, especially after trial and conviction.

Lastly, it is contended that Frederick Baker was an incompetent juror because he had previously been convicted of a felony, and had been sentenced to, and served a term in, the state penitentiary therefor.  It appears from the record that this fact was not known until after the conclusion of the trial and the return of the verdict against the accused.  This identical question was before us in the recent case of *Turley v. State*, 74 Neb. 471.  We held in that case that, counsel for the accused having failed to ascertain the incompetency of the juror, in that respect, such failure amounted to a waiver of the objection.

Other points are raised by counsel for the accused and argued somewhat at length in his brief.  We have not discussed them in this opinion because they are so well settled by our former decisions as not to require specific mention.

After a careful review of the record in this case, we are of the opinion that it contains no reversible error, and the judgment of the district court is therefore

AFFIRMED.

SEDGWICK, C. J., dissenting.

The defendant was found guilty of murder in the first degree, and sentenced to imprisonment for life.  In the

sixth instruction given by the court to the jury the following sentence occurs: "An unlawful killing with malice, deliberation and premeditation, constitutes the crime of murder in the first degree." It is a complete and positive statement and is incorrect. The statute is: "If any person shall purposely, and of deliberate and premeditated malice * * * kill · * * * every person so offending shall be deemed guilty of murder in the first degree." Under the instruction above quoted the jury might have found the defendant guilty of murder in the first degree, although they had a reasonable doubt that the killing was purposely done on his part. It is true that in the same instruction the jury were plainly told that "to constitute murder in the first degree there must have been an unlawful killing done, purposely and with deliberate and premeditated malice." The one statement in the instruction is as complete and positive as the other, and we cannot with certainty say that the jury disregarded the incorrect statement. In *Beck v. State,* 51 Neb. 106, the court in a somewhat lengthy instruction to the jury included this language: "The defendant offers evidence of an alibi, the burden is upon the defendant to prove this defense by a preponderance of the evidence." In the same instruction the court said:

"And when the proof is in, the question for you to determine from all the evidence, both that given for the state and for the defendant, is, is the defendant guilty beyond a reasonable doubt, as charged in the information? And if from all the evidence on the part of the state, and upon the part of the defendant, touching the question of an alibi, then if you have any reasonable doubt of the guilt of the defendant in this case as he stands charged in the information, your verdict should be not guilty."

The last part of this instruction is undoubtedly correct and states the proper rule of law in regard to the consideration that should be given to evidence tending to prove an alibi. But the fact that the jury were properly instructed upon this point in this instruction was not

thought to free the instruction from prejudicial error arising from an incorrect statement contained therein. The reason was because both statements were direct and positive and were inconsistent with each other. The court said:

"It is suggested that the instruction as a whole states the law correctly. It is true that in another part of the instruction it is said that if from all the evidence, including that relating to the alibi, there is any reasonable doubt of the guilt of the defendant, he should be acquitted; but the most that can be said is that the instruction in its different parts is conflicting. An inaccurate or incomplete instruction may be cured if by reference to the rest of the charge the defect is supplied or the law accurately stated; but an absolute misstatement of the law is not cured by a correct statement elsewhere in the charge."

I think this view of the law is correct, and we are undoubtedly committed to the proposition that if the court in its charge makes two contradictory and inconsistent statements upon an important proposition of law directly involved in the case, one of which statements would be itself prejudicially erroneous, the fact that this erroneous statement is contradicted in another part of the charge will not correct the error, since it is impossible to say how much reliance the jury may have placed upon the incorrect statement of law. *Wasson v. Palmer,* 13 Neb. 376; *Ballard v. State,* 19 Neb. 609; *Barr v. State,* 45 Neb. 458; *Henry v. State,* 51 Neb. 149, 66 Am. St. Rep. 450; *Bergeron v. State,* 53 Neb. 752; *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 1; *Williams v. McConaughey,* 58 Neb. 656. In *Bergeron v. State, supra,* the court said:

"The attorney general has suggested that instructions should be construed as a whole. This is undoubtedly the rule, and if when so considered they state the law correctly, they will be upheld. But this principle is not applicable here, since a good instruction will not cure one which attempts to cover the entire case, but which is palpably bad."

In that case there was no positive and erroneous statement in the instruction condemned. It simply, while attempting to cover the whole case, omitted some essential elements, and it was held that another instruction supplying those omitted elements did not cure the error, and several decisions of this court are cited supporting that doctrine. In *Missouri P. R. Co. v. Fox,* 56 Neb. 746, the court said:

"An inaccuracy or incomplete statement in a charge may be cured by further correct and supplementary statements; but an absolute misstatement of the law cannot be cured by a subsequent correct statement conflicting therewith. The doctrine is familiar."

This language was used of an instruction which contained a mistatement of law, and afterwards in the same instruction a contradictory and correct statement was made.

That the killing must be purposely done in order to constitute murder in the first degree is several times stated in these instructions. By the doctrine of chances, it is much more probable that the jury acted upon one or all of those statements than upon the one statement to the contrary. This does not help the matter. After all, it is impossible to say which view the jury took; whether they found that the killing was purposely done, or, relying upon that part of the instruction under consideration, supposed they ought to find the defendant guilty in the first degree, although there was no intention or purpose to kill. Under such circumstances the conviction may be based upon the erroneous statement of the law given to the jury, and the judgment should be reversed.