CLARENCE E. BRINEGAR V. STATE OF NEBRASKA.

FILED NOVEMBER 6, 1908. No. 15,706.

1. Evidence examined, its substance stated in the opinion, and *held* sufficient to sustain the verdict and judgment.

2. Criminal Law: ACCOMPLICES. Something more than mere presence at the commission of a crime is necessary to make one an accomplice. There must be some participation either in the plan or its execution; and, where in a criminal prosecution it appears that a witness for the state was present at the commission of the act, but took no part therein, and entreated and commanded the defendant not to perpetrate it, it is proper for the trial court, when instructing the jury, to refuse to treat the witness as an accomplice.

3. Instructions given by the trial court examined, and found to be without prejudicial error.

4. Jury: CHALLENGE: HARMLESS ERROR. Error cannot be predicated on the overruling of a challenge of a juror for cause, where the record fails to disclose that the complaining party exhausted his peremptory challenges. *Bartley v. State*, 53 Neb. 310.

5. Evidence examined, and found sufficient to prove the venue or the place where, and the time when, the crime in question was committed.

6. Information: SUFFICIENCY. In charging an offense upon or in relation to any property belonging to several partners or owners, it is sufficient to allege that such property belonged to any one or more of them, without naming all of such partners or owners.

ERROR to the district court for Thayer county: LESLIE G. HURD, JUDGE. *Affirmed.*

*M. H. Weiss* and *Richards & Haffke,* for plaintiff in error.

*William T. Thompson, Attorney General,* and *Grant G. Martin, contra.*

BARNES, C. J.

At the December, 1907, term of the district court for Thayer county, Clarence E. Brinegar was charged with wrongfully setting on fire, burning and consuming two certain stacks of oats, the property of one G. W. Lovercheck, of the value of $75. The venue was properly laid in Thayer county, Nebraska, and the date of the offense was alleged to be the 16th day of October, 1907. He was tried and convicted in April, 1908, and the jury found that the property destroyed was of the value of $115. On the trial it was made to appear that the defendant was a minor, about 17 years of age at the time the crime was committed, and for that reason the district court, instead of sending him to the penitentiary, committed him to the industrial school at Kearney, Nebraska, until 21 years of age, unless sooner discharged in the manner provided by law. The defendant has brought the case here for review.

1. His first contention is that the verdict is not sustained by the evidence, because (to use the language of his counsel) there was no evidence to connect him with the act of setting fire to the property in question, except the unsupported testimony of an accomplice. An examination of the record discloses that this contention is not well founded. The principal witness for the state was one Frank Vance, who testified, in substance, that he was working for the defendant's father on the 16th day of October, 1907, and had been working for him for some days before that time; that on the evening of that day he accompanied the defendant to the village of Bruning, which is located in the northern part of Thayer county; that the defendant invited him to make the trip; that they drove a span of mules belonging to the defendant's

father; that they arrived at Bruning about 9 o'clock in the evening, and while there they visited a saloon, where each drank two glasses of whiskey and two glasses of beer. Vance further testified that he purchased a pint of alcohol and a half pint of whiskey, which he took home with him without drinking any of it; that the defendant purchased a bottle of beer, which they drank on their way between Bruning and Belvidere, while returning to the defendant's home; that on their return, and a short time before they reached their destination, they passed the stacks of oats in question, which were situated near the highway; that it was a moonlight night, and they saw an old wagon partly loaded with coal, standing near the stacks; that he was driving, and, when they saw the wagon, the defendant called "Whoa!" stopped the team, jumped out of the buggy, and said: "Come on and help me tip this wagon over"; that he refused to assist the defendant, who thereupon took the wrench out of the doubletree, unscrewed the burrs from the wheels of the wagon, and threw two of them to the northeast; that he did not know what was done with the third one; that the defendant then called to him again to help him to turn the wagon over; that he refused to assist the defendant, and entreated him to come on, get into the buggy and go home; that the defendant finally seemed to get one wheel off the wagon, and again called to him to help overturn it; that the defendant then took hold of the team by the bits, turned them around and led them up toward the stacks; that, as soon as the defendant let go of the team, he drove them away and turned them into the road again; that he was all the time commanding and entreating the defendant to come on and get into the buggy and go home; that the defendant thereupon said: "If you don't help me turn this wagon over, I will set fire to these two stacks." I said: "You won't do any such thing. Come on and go home." The defendant thereupon got out a match, lit it, fired the stacks, and then ran to the buggy and got in, remarking: "You didn't think I'd do it, did you?"

This evidence is absolutely undisputed by any one, and it should therefore be taken as true. An accomplice is one who co-operates with or aids and assists another in committing a crime; one who is not the principal actor in or instigator of the commission of a crime, but who to some extent assists in its commission or encourages it beforehand. The term accomplice is sometimes used as equivalent to accessory before the fact. An aider or abettor may be one who so far participates in the commission of a crime as to be present for the purpose of assisting therein, if necessary. In such a case he will also be liable as principal. In 1 McClain, Criminal Law, sec. 199, it is said: "Either an accomplice or an aider and abettor will in general be principal or accessory, depending upon whether he is present or absent when the crime is committed. * * * Something more than mere presence, even accompanied with approval of the act done, is necessary to make one an aider and abettor. There must be some participation, either in the plan or its execution." The evidence shows that Brinegar committed the crime, not only without the assistance or procurement of Vance, but in direct opposition to his importunities not to do it. So it may be said that the evidence fails to show any fact or circumstance which would render Vance an accomplice in the transaction. It further appears from the testimony that, after defendant had fired the stacks, Vance, who was with difficulty holding the team, repeatedly begged him to put the fire out. Again, the record does not show that Vance was ever charged with the commission of the crime or that any one ever claimed that he was responsible for it in any way. It follows that the witness was not an accomplice, and for this reason the defendant's contention is not well founded.

Considering the quantum of the evidence, it may be further stated that the circumstances surrounding the transaction strongly corroborate the testimony of the principal witness. For instance, the defendant and the

39

witness were seen driving the mule team belonging to the defendant's father on the evening in question, and were recognized by certain of the witnesses on their way to Bruning. They were also seen on their return upon the road that passed the oat stacks in question, and their team and buggy were tracked from the burned stacks to the defendant's home, where they were found the next morning. No evidence was offered which even tended to dispute any of the foregoing facts, and we are constrained to hold that the evidence was amply sufficient to sustain the verdict.

2. Complaint is also made of the refusal of the court to instruct the jury that the testimony of an accomplice should be carefully scrutinized. In the light of what we have said in disposing of the defendant's first contention, further comment on this assignment is unnecessary. As a matter of fact, there was no evidence on which to base such an instruction.

3. Defendant complains of the fourth instruction, by which the jury were informed that they must be satisfied beyond a reasonable doubt of the truth of all the essential elements of the information. It is insisted that the effect of this instruction was to place a limitation upon the presumption of innocence. We do not so understand the record. By the third instruction the court defined the elements of the crime charged in the information. Then followed the fourth instruction, which reads as follows: "The plea of not guilty in this case made by the defendant, places upon the state the burden of proving every essential element of the crime charged in the information by competent evidence which satisfies your minds beyond a reasonable doubt of the truth of such facts, and the resulting guilt of the accused. The defendant is presumed to be innocent until every one of these essential facts is proved beyond a reasonable doubt, and, unless the essential facts constituting the crime charged in the information are established to that degree of certainty, then you should acquit him." This seems to be a correct ex-

position of the law, and we fail to see the force of the defendant's criticism.

4. Defendant's fourth contention is that the court erred in instructing the jury on the question of drunkenness and intoxication. He especially attacks that part of the instruction which reads as follows: "You are instructed that it is the rule of law that a person, having made himself drunk by the voluntary use of intoxicating liquor, cannot make such condition an excuse for crime committed while so intoxicated." In *O'Grady v. State*, 36 Neb. 320, we approved of the instruction above quoted. Again, the instruction complained of, taken as a whole, was most favorable to the defendant, for by it the jury were clearly informed that, even though it were shown that the defendant was intoxicated, the burden of proof still rested upon the state to show beyond a reasonable doubt that he, notwithstanding his intoxication, was able to distinguish between right and wrong, and know the nature of his act. In concluding our remarks on this assignment, it may be said that the evidence fails to show that the defendant was intoxicated to any appreciable degree, and therefore the court would have been justified in refusing to instruct upon that question at all.

5. Defendant's fifth contention is that the court erred in selecting the jury in this case. That his objection to juryman Fry, for cause, should have been sustained. It appears from the examination of the juror, contained in the record, that he was opposed to the use of intoxicating liquor. Yet he stated that he could render a verdict upon the evidence and the law as given by the court, without being influenced by that fact in any way. He was asked: "Q. Are you able to say that that fact, if it would develop on the trial, would have no influence upon your mind one way or the other in arriving at a verdict? A. No; I don't know as it would. I don't know why it should have. Q. And, if that fact should develop, could you decide this case upon the evidence and the law just as you would if it did not exist, could you? A. Yes, sir." In the light of this

examination, we fail to see any force in the defendant's objection, and we are satisfied that the challenge to the juror was properly overruled. Again, the record fails to show that the defendant exhausted all of his peremptory challenges, and for that reason his exception cannot be considered.

6. Defendant's sixth contention is that the venue was not proved in this case. The record discloses that the witess Lovercheck, after describing the situation of the burned stacks and the wagon, and fixing the value of the property destroyed, and its location, testified as follows: "Q. That was in Thayer county, Nebraska? A. Yes, sir. Q. And on or about the 16th day of October, 1907, last? A. Yes, sir." With this evidence before us it seems clear that defendant's objection is without merit.

Finally, it is contended that the ownership of the property was not proved as stated in the information. It appears that G. W. Lovercheck, who it was alleged was the owner of the property, leased the premises on which the oats were grown; that he was the absolute owner of two-thirds of the crop, and had contracted to deliver one-third of it to the owner of the land, as payment for the rent. The jury by its verdict fixed the value of the property destroyed at $115, and it appears that Mr. Lovercheck's interest therein amounted to more than $75, which was the amount and value alleged in the information. Again, section 418 of the criminal code provides: "When any offense shall be committed upon or in relation to any property belonging to several partners or owners, the indictment for such offense shall be deemed sufficient if it allege such property belonged to any one or more of such partners or owners, without naming all of them." This section of the statute in itself fully disposes of the defendant's objection.

Finding no reversible error in the record the judgment of the district court is in all things

AFFIRMED.