CLARENCE TVRZ, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.
48 N. W. 2d 761

Filed July 16, 1951. No. 32970.

642

*John E. Mekota,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *William T. Gleeson,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is a criminal action which was instituted by the filing of an information in the district court for Saline County, Nebraska, charging Clarence Tvrz with murder in the first degree. The action was prosecuted in the name of the State of Nebraska, plaintiff, against Clarence Tvrz, defendant. In the information it was charged that the defendant killed Helen McElroy.

The defendant was tried to a jury. The jury found him guilty as charged and fixed the penalty at life in the State Penitentiary. A motion for new trial was duly filed which was overruled, whereupon sentence was imposed in conformity with the verdict of the jury. The defendant has brought the action of the district court in overruling the motion for new trial and in imposing sentence to this court for review by petition in error. For the purposes of this opinion the defendant in error, the State of Nebraska, will be referred to as the State and the plaintiff in error, Clarence Tvrz, will be referred to as the defendant.

The brief of defendant contains numerous assignments of error which he contends are grounds for a reversal of the action of the district court. Before adverting to them it appears well to set forth certain facts conclusively appearing as background for the consideration of the assignments.

On April 19, 1950, at about 10:30 p. m., in a tavern at Wilber, Nebraska, the defendant shot and killed one Helen McElroy and one Ivan McElroy. The prosecution here is for the killing of Helen McElroy. There is no evidence of cause, excuse, or provocation for the act except an inference from the testimony of witnesses that the defendant became angered when he saw Helen McElroy talking to men other than her husband and himself. The defendant gave evidence that this an-

noyed him but he gave other evidence that he did not regard this as ground for the act proved against him. It is to be noted here that over a period of several years a continuing illicit relationship had existed between the defendant and Helen McElroy. This relationship appears in great detail by admissions in the testimony of the defendant.

On arraignment the defendant pleaded not guilty. On the trial however no effort was made to dispute the fact that Helen McElroy came to her death at the hands of the defendant. The substantial defense interposed under the plea was that of insanity, so-called, or more properly under law that the defendant did not know the difference between right and wrong with reference to the act committed.

The evidentiary effort in this connection was to show that he was incapable of knowledge of the act and that he had no knowledge whatever thereof and was without any intent or capability of an intent to commit it. In pursuance of the effort the defendant gave evidence of consumption of large quantities of intoxicating liquor from about 2 p. m. to about 8:30 p. m. and particularly between 6 p. m. and 8:30 p. m. and a complete absence of knowledge of anything that occurred from about 8:30 p. m. until more than an hour after Helen McElroy was killed. In addition to this, evidence was adduced indicating mental instability in the immediate family of the defendant. There was none of mental instability of the defendant except that claimed to have been induced by intoxicating liquor on the night of the killing and other indefinite occasions which were not described.

To support the theory that the defendant did not know the difference between right and wrong with reference to the act committed and that he was incapable of maintaining the intent necessary to the commission of the crime of murder a psychiatrist was called as a witness.

In response to a hypothetical question containing the

family history of the defendant, his educational and environmental background, his general habits and conduct, his conduct with Helen McElroy and Ivan McElroy, his conduct and actions on the evening of April 19, 1950, before and after the shooting, and experiences in training and in action in the second World War, all as disclosed by the evidence, this psychiatrist gave it as his opinion that at the time of the killing the defendant did not know the difference between right and wrong with reference to the act and that he was incapable of maintaining an intent to commit the act.

In rebuttal the State called as witnesses two psychiatrists, namely Dr. F. L. Spradling and Dr. Juul C. Nielsen. Dr. Spradling was allowed, over objection, to give it as his opinion that the defendant did know the difference between right and wrong with reference to the act of killing Helen McElroy. The defendant urges that this was error. The ground of the alleged error is that no sufficient foundation was laid for the opinion. This assignment appears as No. 1 in the brief of defendant.

As shown by the evidence, Dr. Spradling was duly qualified by education and experience as a specialist in the field of nervous and mental diseases. In September or October 1950, he examined the defendant for almost three hours. It was on the basis of that examination that he was allowed to give his opinion. This foundation, the defendant urges, was insufficient upon which to allow him to give an opinion.

He gave as his reasons for the opinion the following: "In examining the patient I found no evidence of psychosis, insanity, psycho-neurosis. There were no symptoms of mental disturbance. In inquiring into his past, I found no evidence of such abnormality indicated in his history. There were no symptoms of delusions or hallucinations which are a necessary finding in order to find a person legally insane or psychotic."

The contention of the defendant, under previous holding of this court, is without merit. In Torske v. State,

123 Neb. 161, 242 N. W. 408, a case wherein the question here involved was exhaustively considered, it was held that a medical expert may properly give his opinion on the question of whether or not a defendant knew the difference between right and wrong with reference to a particular act based upon an examination and the results thereof. The only stated limitation upon the propriety is that such witness shall be required either before or after giving his opinion to give the reasons therefor.

. In the case at bar the witness described the examination made, gave his opinion, and thereafter gave his reasons therefor strictly in conformity with the pronouncement in Torske v. State, *supra*.

Dr. Nielsen, like Dr. Spradling, was shown to be an expert in nervous and mental diseases. He did not examine directly the defendant. He sat in the courtroom and heard all of the testimony given by the defendant throughout and observed his demeanor on the witness stand. The examination of the defendant in chief, the cross-examination, and the re-examination were lengthy and exhaustive. Based on this the witness was allowed to give it as his opinion that the defendant knew the difference between right and wrong with reference to the act committed.

The defendant by assignment of error No. 3 complains that the question which elicited the opinion was insufficient in that it did not require the witness to assume the truth of the testimony given by the defendant. In support of his contention he cites Jones v. Chicago, St. P., M. & O. Ry. Co., 43 Minn. 279, 45 N. W. 444, and Omaha & R. V. Ry. Co. v. Brady, 39 Neb. 27, 57 N. W. 767.

The cited Nebraska case fails to sustain the contention. In the opinion it is pointed out that the opinion of a medical expert may rest upon any one or more of three bases, namely (1) acquaintance with the party under investigation, (2) a medical examination made

by the expert, or (3) a hypothetical case stated to the expert in court.

The matter of assumption to be contained in a question propounded to an expert witness was not involved. The substantial objection was that the question propounded called for an opinion based in part upon an examination made by the expert and in part upon testimony heard in court by him, as follows: " 'Objected to by the defendant, as improper, as it is founded partially upon the memory of the witness as to what testimony was given by the plaintiff to the jury.' " The objection was overruled. The court's interpretation of the objection is the following: ·"It will be observed that the objection is 'that the witnesses remembered only part of Brady's evidence.' " The following observation was made in regard thereto: "The objection itself was not on its face a valid one."

The Minnesota case cited is authority for the proposition that a hypothetical question propounded to an expert witness must contain an assumption of the truth of the testimony referred to in the question and that the answer must be responsive to that assumption. It is also authority for the proposition that instead of stating the evidence the attention of the witness may properly instead be directed to testimony which he has heard and thus include it in the hypothetical question.

Neither the rule in this case nor the one in the cited Nebraska case however has any application here. The question which elicited the opinion of this witness did not embrace the testimony of the defendant as such as a basis for the opinion. It embraced the observations made of the defendant during the trial. This is clearly apparent fròm the question itself, as follows: "Q. Doctor, did you, from your observation of the defendant while he was on the witness stand, and taking into consideration his attitude and general behaviour, his stream of thought, his emotional observations, his thinking, his memory and orientation, did you ·form an opinion as

to whether or not the defendant, Clarence Tvrz, on the night of April 19, 1950, about 10:30 o'clock p. m., knew or had the mental capacity to know the difference between right and wrong with respect to the killing or the shooting of Helen McElroy? Just answer yes or no, please."

This witness as an expert testified from personal observation of the defendant and he testified fully to the facts on which he based his opinion. The assignment of error is without merit. Braunie v. State, 105 Neb. 355, 180 N. W. 567, 12 A. L. R. 658; Torske v. State, *supra*.

The next assignment to be considered is the one numbered 2 in the brief. The gist of this one is that Dr. Nielsen was permitted over objection to testify to conclusions concerning the defendant's mental condition at the time of trial and to conclusions concerning matters of common knowledge amounting to an invasion of the province of the jury. The record has been examined and the assignment found to be without merit. The evidence in this respect constituted interpretative facts which were the necessary basis for the ultimate opinion of the witness. Torske v. State, *supra*.

Early on the morning of April 20, 1950, the defendant was taken from Wilber to the State Penitentiary at Lincoln, Nebraska, for safekeeping where he was kept until a short time before the trial. He was held incommunicado for about 30 hours. In the meantime a statement was taken from him which appears as Exhibit 19. No objection is made in the assignment to the statement. The objection of assignment No. 4 is that the court excluded as hearsay evidence of statements of the warden made during this period to defendant's sister, his brother, and his attorney, and in excluding the details of all that occurred during the confinement.

No theory or rule of law has been advanced to counteract the theory that the evidence of statements of the warden was hearsay and nothing has been offered which

indicates that any right of the defendant was prejudiced by anything that occurred during the first 30 hours or thereafter. Exhibit 19 was obtained and this was received in evidence on behalf of the State. It contained no statement of material fact which was not testified to fully and more elaborately on the trial by the defendant when called as a witness in his own behalf. Also another and much more elaborate statement was taken from the defendant which was offered and received in evidence on behalf of the defendant himself which departed not in any substantial particular from Exhibit 19 and the testimony of the defendant given at the trial except one. The departure was a denial of illicit relations with Helen McElroy whereas in Exhibit 19 and on the trial they were admitted.

The appropriate rule is that the admission of incompetent evidence is not prejudicial where the same facts are established by the testimony of the complaining party himself, and this is true whether he establishes it before or subsequent to the admission of the incompetent evidence. McNutt v. State, 68 Neb. 207, 94 N. W. 143; O'Hearn v. State, 79 Neb. 513, 113 N. W. 130, 25 L. R. A. N. S. 542; Wever v. State, 121 Neb. 816, 238 N. W. 736.

Assignment of error No. 4 is without merit. This conclusion also disposes of the fifth assignment. The fifth assignment is that the court erred in not instructing the jury that Exhibit 19 was involuntary. Whether or not it was involuntary failed of importance, under the authority of the cases already cited, after the defendant gave his testimony and after introduction of the other and later statement previously referred to herein which is Exhibit 22.

Assignment of error No. 6 is a complaint that instruction No. 5 given by the court was erroneous. Particularly, the objection is that the time element involved and the deliberation and premeditation necessary to the crime of first degree murder received improper emphasis

and that in that connection the instruction was confusing.

All of the elements of the crime of first degree murder were set forth and defined in the instructions as a whole with precision and accuracy, and this instruction has been in form and substance approved by this court. Carleton v. State, 43 Neb. 373, 61 N. W. 699; Savary v. State, 62 Neb. 166, 87 N. W. 34; Reed v. State, 75 Neb. 509, 106 N. W. 649; Hamblin v. State, 81 Neb. 148, 115 N. W. 850. There was no error involved in the giving of the instruction.

It becomes necessary to consider assignments Nos. 7 and 8 together.

Assignment No. 7 relates to the seventh instruction. Instruction No. 7 informs the jury of the elements necessary to be proved by the State before the defendant may be convicted of first degree murder. One of the elements is the following: "That at the time of the killing the defendant, Clarence Tvrz, was not insane, as hereinafter explained, * * *."

The complaint is that the instruction ignores the defense of intoxication. In this connection the defendant contends that the defense of intoxication is not elsewhere submitted except in instruction No. 11 which instruction is erroneous. The claimed error in instruction No. 11 is the basis of the eighth assignment of error. Assignment No. 7 must therefore prevail or fall with assignment No. 8.

As a defense to the crime charged the defendant adduced evidence that because of voluntary intoxication he was incapable of the deliberation and premeditation essential to the formation of criminal intent. The burden was on the State, of course, to overcome this and to prove the contrary beyond a reasonable doubt.

In this connection the court instructed as follows which is the part of instruction No. 11 which it is contended is erroneous: "You are instructed that ordinarily voluntary intoxication is no justification or excuse for crime; but excessive intoxication by which a person is wholly

deprived of reason, if such intoxication was not indulged in to commit crime, may prevent deliberation, premeditation or the formation of a criminal intent, and if you find such intoxication existed, it should be considered by you, together with all the facts and circumstances in evidence, for the purpose of determining whether or not the defendant, Clarence Tvrz, was at the time in question capable of deliberation, premeditation or of entertaining the intent charged."

This expression of the attitude required of a jury in considering voluntary intoxication of a defendant charged with a criminal offense has been approved by this court. In O'Grady v. State, 36 Neb. 320, 54 N. W. 556, it was said: "Intoxication is no justification or excuse for crime; but evidence of excessive intoxication by which the party is wholly deprived of reason, if the intoxication was not indulged in to commit crime, may be submitted to the jury for it to consider whether in fact a crime had been committed, or to determine the degree where the offense consists of several degrees." This principle of law was approved in Brownrigg v. State, 136 Neb. 729, 287 N. W. 193. See, also, Hill v. State, 42 Neb. 503, 60 N. W. 916; Latimer v. State, 55 Neb. 609, 76 N. W. 207, 70 Am. S. R. 403; Brinegar v. State, 82 Neb. 558, 118 N. W. 475. The seventh and eighth assignments of error are without merit.

By his ninth assignment of error the defendant urges that the court erred in refusing to give the following instruction requested by him: "If from all of the evidence produced in this case, * * * you should find the defendant, at the time of the shooting, or just prior thereto, was laboring under such a defect of the mind and reason, whether the result of drinking alcoholic liquor, heredity, military service, or any other cause, as not to know the nature and quality of the acts he was doing, and was incapable of forming a criminal intent, he cannot be convicted of the offense charged and your verdict should be, 'Not Guilty', on the ground of insanity."

There is no evidence in the record that the defendant was laboring under a defect of mind or reason flowing from heredity or military service. It is true that there is evidence of mental infirmity in his family and that the defendant had been subjected to harrowing experiences in the military service but none that these or either of them had any controlling influence upon him on the night of April 19, 1950.

There was evidence relating to the excessive use of alcoholic liquor. The attitude required of the jury toward this subject was properly and fully presented by instructions already discussed and the other instructions presenting and defining the issues. The rule appropriately determining this assignment is that where the trial court having on its own motion instructed the jury as to the defense in a criminal case, it is not required to repeat in another form any such instruction or instructions at the request of the defendant. Johnson v. State, 88 Neb. 565, 130 N. W. 282, Ann. Cas. 1912B 965.

The tenth assignment of error is a contention that the court at the request of defendant should have given instruction No. 12 requested by the defendant. This was a cautionary instruction regarding the attitude required of a jury in considering oral statements purported to have been made by the defendant and testified to by witnesses. The purport of the requested instruction was to say such statements should be received with great caution because of unintentional alteration of words or expressions by the witness.

In Bourne v. State, 116 Neb. 141, 216 N. W. 173, this court held that it was error for the court to refuse to give such an offered instruction. It appears however that in that case the court was addressing itself to a situation where the oral statements were material in proof of the crime charged, particularly where from them deduction might flow as to a design or purpose to kill. Such is not the case here.

One witness testified that on the way from Wilber to

Lincoln, Nebraska, on the night of the killing the defendant said, not in response to any questions, "I can kill a man as easy as I can kill a dog or a chicken," and another testified that he said, "I can kill a man as easy as a dog or a chicken." A third witness testified to a statement not at all different in substance. The argument upon the cautionary instruction relates to this or these statements and no other.

In view of the fact that all of the illuminating facts sursounding the killing were before the jury through testimony of eyewitnesses to the tragedy including the testimony as to statements made by the defendant at the time and not adverted to in the briefs we fail to see how it may be said that this statement called for the giving of this instruction. There is no contention that the statement as testified to was not clear, distinct, and unequivocal, or that it was capable of misunderstanding or that it had been misunderstood.

We think it proper to say that in cases where testimony has been given as to material oral statements of a defendant in a criminal case and such statements lack clarity or are equivocal or are capable of misunderstanding it is required that the jury be instructed that testimony as to such statements shall be received with caution, but where the statements are clear and unequivocal and not subject to misunderstanding no such instruction is necessary. In the latter situation the weight to be given the testimony in this respect is, along with all the other evidence, for the jury. See Bode v. State, 80 Neb. 74, 113 N. W. 996.

The next and last assignment of error argued in the brief is that the court erred in refusing to give the following instruction requested by the defendant: "You are instructed that you must not presume malice merely because the defendant used a deadly weapon. The State must prove malice beyond a reasonable doubt."

The instructions given fully describe the charge, define the elements of the charge including that of malice,

and inform the jury as to its duty with reference to proof. There is nothing in this record calling for instruction on presumption flowing from the use of a deadly weapon. This court pointed out in Quijas v. State, 133 Neb. 410, 275 N. W. 588, and Lucas v. State, 78 Neb. 454, 111 N. W. 145, that in cases where proof of guilt including the element of malice is dependent upon the evidence of eyewitnesses who saw the transaction no question of presumption is involved.

The defendant relies on Quijas v. State, *supra,* to support his assignment but it fails to do so. No such question was involved. It was pointed out only that no presumption of malice was available to the State from evidence of the use of a deadly weapon where the circumstances attendant upon a homicide were fully testified to by eyewitnesses.

Finding no prejudicial error the judgment of the district court is affirmed.

AFFIRMED.