ELIZABETH L. KRISS, ADMINISTRATRIX, APPELLEE, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED FEBRUARY 5, 1917.   No. 19065.

1. **Appeal:** ARGUMENT OF COUNSEL: FAILURE TO OBJECT.   The general rule is that counsel cannot remain quiet and seemingly acquiesce in remarks of opposing counsel in his argument to the jury, and after verdict obtain a reversal because of matters not objected to at the time.

2. **New Trial:** ARGUMENT OF COUNSEL: FAILURE TO OBJECT.   When counsel in his argument to the jury assumes that prior remarks

100 Neb.—51

of opposing counsel justify and make necessary the reply which he is making thereto, opposing counsel may by objection take the ruling and instructions of the court thereon. If he makes no objection and appears to acquiesce in the assumption of counsel, he will not after verdict ordinarily be granted a new trial because of alleged impropriety of his opponent's argument.

3. Stipulations: WITHDRAWAL. When in the course of a jury trial the parties agree upon two stipulations, one of which tends to increase the amount of the plaintiff's claim and the other tends to diminish it, neither party should be allowed, after the cause has been submitted to the jury upon such stipulations, to withdraw the stipulation against his interest and enforce the other.

4. Trial: REFUSAL OF INSTRUCTIONS. When the trial court gives a general instruction upon a matter involved in the issues, and a more specific instruction is requested, such request should fairly present the matter as it affects all parties to the litigation. If it fails to do so, to refuse the request will not be prejudicial error requiring a reversal, unless it appears from the entire record that the jury probably misunderstood the real issue for want of a more specific instruction.

5. Damages: REMITTITUR. In an action for damages, the burden is upon the plaintiff to prove by a preponderance of the evidence each element of damage sustained. If it appears that the verdict includes an item of damage not so proved, a remittitur will be required.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed on condition.*

*Edson Rich* and *A. G. Ellick,* for appellant.

*Sullivan, Rait & Thummel, contra.*

SEDGWICK, J.

The plaintiff, as administratrix of the estate of her deceased husband, John J. Kriss, brought this action in the district court for Douglas county to recover damages for the alleged negligence of the defendant causing the death of the decedent. She recovered $18,137.16, and the defendant has appealed.

The decedent lost his life in a collision of two of the trains of the defendant, and the defendant submitted the case to the jury, conceding its liability, and contesting only the amount of the recovery.

The principal ground urged by the defendant for a reversal is the misconduct of the plaintiff's attorney in his closing address to the jury. The plaintiff's attorney, among other things, urges that his remarks complained of were induced by the prior remarks to the jury by the defendant's attorney. These respective attorneys are, and long have been, among the leading and influential members of the bar of this state, and, from the view that we take of this record, we are fortunate in not being required to comment upon the propriety of the language complained of. The address to the jury of the defendant's attorney is not in the record; but the plaintiff's attorney insists that the character of his address sufficiently indicates the conditions which he was required to meet as brought on by the defendant's attorney. No objections were made to the remarks complained of, and no rulings of the court were asked thereon by the defendant's attorney. Under ordinary circumstances, the general rule is that counsel cannot remain quiet and seemingly approve of what is being done, or at least to acquiesce in it, and afterwards obtain a reversal of the case because of matters not objected to at the time. The exception to this rule in cases of this kind is well stated by SULLIVAN, J., in *Chicago, B. & Q. R. Co. v. Kellogg,* 55 Neb. 748: "We do not, however, wish to be understood as holding that a rebuke from the court, or even a complete retraction by the offending counsel, is in all cases of this kind a sovereign remedy. If the transgression be flagrant—if the offensive remark has stricken deep, and is of such a character that neither rebuke nor retraction can entirely destroy its sinister influence—a new trial should be promptly awarded, regardless of the want of an objection and exception." The address of plaintiff's attorney to the jury is quoted at length in the record, and it appears that he continually assumed, at least in this address, that the condition of the record and the prior remarks of the defendant's attorney justified the language which he was using. If a seasonable

objection had been interposed to these remarks, this question of justification in using them would necessarily have been presented to the court, and the decision thereon of the learned judge who tried this case would have carried great weight with this court, and the determination of the trial court as to the rights of the respective counsel and the propriety of the remarks complained of would, without doubt, have been regarded and complied with by all counsel interested in the case. We think that without regard to the general character of these remarks, which appear to have run through the entire address, the defendant is not now in a position to ask for a reversal of the judgment on these grounds.

The question whether the judgment is excessive remains to be considered. The defendant contends that the damages allowed by the jury were augmented by an error of the court in an instruction to the jury. The court prepared instruction No. 11 to be given to the jury, in which he told the jury: "To enable you to better understand the method of arriving at the present worth of a given sum, the court gives you an illustration by way of example: If it was desired to find what the present worth of $100 due in one year on the basis of money being worth 5½ per cent. (the amount agreed on by the parties for the purposes of this case), you would divide $100 by $1.055, that being the interest on $1 for one year plus the $1. The result of such division would be $94.78 plus, which is the present value of $100 due in one year. If $100 is due in two years, on the basis of 5½ per cent. the present worth would be found by dividing $100 by $1.11; the $1.11 being the interest for two years plus the $1. For the period of three, or subsequent years, the present worth may be found by applying the same rule. The aggregate of these sums for the different periods would be the present worth." The parties entered into a stipulation: "It is agreed that neither party will except to the formula as a basis upon which to figure the present worth as given by the court in

its instruction No. 11." After the jury had considered the case for some time, they sent to the court an inquiry in writing: "Honorable Judge—Sir: Please give us, the jury in this case, the present value of $31,620, and oblige the jury. Ed Porter, Foreman.  P. S. Life expectancy 31 years at $85 per month. E. P."  It appears from the request for information submitted by the jury that the jury had already determined the expectancy of the decedent, and the amount of his contribution to the support of the widow and her children.  It was when the counsel attempted to estimate the present worth of the sum indicated by the jury upon the basis of the court's instruction No. 11 that the question arose. Thereupon the defendant's counsel asked to withdraw from the agreement not to except to instruction No. 11 containing the formula, and asked for time to prepare a showing in support of the application.  The court denied "the right to make any further showing at this time," because the jury, after having deliberated for some time, had agreed upon the facts necessary to a complete verdict, and had merely asked for instruction as to the legal method of calculating the amount of the present worth.  It was also stipulated by the parties: "That in figuring the present worth of a given sum to be paid in annual instalments in the future the jury may base their calculations upon the rate of 5½ per cent."

The plaintiff's counsel contends that the rate of interest at 5½ per cent. is altogether too large, and that, if the stipulation in regard to the formula for computing the present worth was withdrawn and the correct rule for such computation was given to the jury, the stipulation fixing the rate of interest at 5½ per cent. ought also to be changed.  There is evidence in the record that these two stipulations were both agreed upon during the trial of the case and that one is the consideration for the other.  This evidence, so far as we have observed, is not denied.  There is room for a difference of opinion as to the rate of interest that may be obtained upon investments.

There is evidence tending to show that the rate of 5½ per cent. is altogether too large. Because of these two stipulations the plaintiff neglected to produce evidence as to the proper rate. It may be that if the correct rule of computing the present worth had been given to the jury, instead of the rule agreed upon as announced in instruction No. 11, and evidence had been taken as to the usual rate of interest upon such investments, the result would have been substantially the same; that is, it seems to have been assumed by counsel that one stipulation would offset the other, and perhaps they were not far wrong in so considering. At all events, the court was right in refusing to allow one stipulation to be withdrawn and the other to stand.

The defendant asked the court to instruct the jury that the "children at a certain age may become self-supporting and would not have received any pecuniary benefit from the said John J. Kriss at that time had the said John J. Kriss lived," and, that "you are entitled to consider whether or not the annual earning power of the said John J. Kriss near the end of his probable life expectancy would be as great as it was at the time of his death, and as to whether or not the amount that he would probably contribute to the support of his wife and children would have been as great near the end of his life expectancy as it was at the time of his death." The instructions given by the court were general and contained the following: "In considering this, it is proper for you to consider the age of the deceased, and the age of his widow and children, and from all the facts and circumstances proved determine what sum the deceased would probably have contributed to the financial benefit of his wife and children during the remainder of his life had he lived." It would have been quite proper to have informed the jury that decedent's earnings might have increased or decreased, and that the children might have become more or less dependent upon their father as time went on. But this seems to

Kriss v. Union P. R. Co.

have been made clear to the jury during the trial, and the instructions requested did not so fully state the propositions as to make them competent without further instructions. We do not think it is so clear that the refusal of this request was prejudicially erroneous as to require a reversal.

Decedent was earning $110 a month. The jury found that he would devote $85 to the support of his family and $25 to his own support. From a computation, taking the amount they allowed the widow as a basis, they must have found that something over $50 a month would be devoted to her support. The evidence will not justify the finding that more would be devoted to the support of the widow than to the support of the deceased himself. If we conclude that the amount that would be devoted to the support of the children is correctly found, then $75 a month would be devoted to the support of the widow and the decedent, $37.50 each. The amount found in favor of the widow, $10,137.16, is at least 25 per cent. too large.

If the plaintiff remits $2,534.29 from the judgment in favor of Elizabeth L. Kriss within 30 days, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded for a new trial as to the recovery in behalf of Elizabeth L. Kriss. The court will allow either party to withdraw from the two stipulations stated.

JUDGMENT ACCORDINGLY.

HAMER, J., dissenting.

I am unable to agree with the views expressed in the majority opinion, and feel called upon to register an earnest dissent.

I have read eloquence all my life and generally with much admiration. An examination of the speech of senior counsel for the plaintiff shows rare ability. Counsel talks most eloquently, I might say most seductively, of facts not shown by the testimony in the case.

The question to be tried was whether there was negligence upon the part of defendant's servants which resulted in the death of plaintiff's decedent. Counsel first said that no corporation could have either the virtue or benevolence that counsel for the defendant would "want you to think it possesses. I admire virtue wherever I see it, and virtue is worthy of reward, but, gentlemen, I am not willing that they should be compensated for their virtue at the expense of this woman and her five children." This is followed by the statement that notwithstanding the fact that counsel were very sorry, yet, nevertheless, "why did they kick us down stairs." Again this is followed by a statement that in times gone by the value of a human life was limited to the right to recover $5,000. Then comes the statement that the corporations put that law upon the statute book. I have not noticed any testimony of that kind in the record. Afterwards comes the consideration of something which counsel for the plaintiff say does not permit a recovery. "These children will miss their father, they will miss his friendly assistance in preparing them for life's battle. Who can estimate the value of it? Money won't measure it. All the counsel and moral instruction, advice and help and the encouragement that a good father can give to his children, that is gone, gentlemen, and they can never have it. We ask nothing for that because the law don't give compensation for that loss, great as it is; we get nothing for that." Of course, the purpose was to excite sympathy for the plaintiff and the children by this sort of a reference. Soon this is followed by a statement that one of the counsel for the plaintiff used to receive for his services only $1,200 a year. Counsel estimated that five years before this trial the particular counsel had only been receiving 60 per cent. of what he was then getting. The next picture in the panorama was of the manager of the railway company as a brakeman with a brakeman's salary. Then came a picture of the president of the company when he

was a telegraph operator and was alleged to be earning $75 a month. Then the jury were told that the manager's salary was $25,000 a year, while the president was drawing $50,000 a year. Then came the picture of another railroad man alleged to have been a brakeman on another railroad, but who was now claimed to be the owner of untold millions. Examination of the record and briefs will show that the rhetoric and literature of counsel for the plaintiff was seemingly inexhaustible on the subjects that were *not* before the court, and with which the jury had nothing whatever to do.

In *Chicago, B. & Q. R. Co. v. Kellogg*, 54 Neb. 127, counsel for Kellogg in his argument to the jury after the close of the testimony said, among other things: "The defendant company forces its parasites to swear in its behalf. The employees of the defendant are surrounded by superintendents and assistant superintendents, who hold them by the neck and say to them: 'Oh, how easy I can drop you, how easy I can drop you!'" This court said: "That the language is totally unwarranted by the record and not within the range of the legitimate inferences and deductions which might be drawn from the evidence; that it was calculated to arouse the passions and prejudices of the jury, too easily excited in cases like this, and instead of assisting them to calmly inquire as to whether the plaintiff below had been injured through the negligence of the railway company, and, if so, the extent of such injury and what amount of money would compensate him therefor, and render a verdict accordingly, this language was calculated to inspire the jury with a desire to punish the railway company for the injury which its negligence had inflicted upon the plaintiff. That these poisonous shafts of fiery invective did their work we think is manifest from the amount of the $9,000 verdict which the jury did render. Judgments have been often assailed in this court because of the alleged misconduct of counsel for the parties in whose favor the judgments were ren-

dered." A large number of authorities are cited in support of this position. It is then said: "These cases establish that a lawyer charged with the conduct of a case is invested with certain rights and charged with certain duties. It is his duty to use all honorable means to protect his client's interests; and in argument, within the limits of the evidence and the legitimate deductions and inferences to be drawn therefrom, he may not be limited, but may comment on the conduct and credibility of witnesses and parties to the suit. On the other hand, he must act honorably and fairly with the court, opposing counsel, the jury, and the parties to the litigation. But he may not, in his conduct of the case or in his argument to the jury, go outside the record, the evidence, and the legitimate inferences deducible therefrom, and ask questions, make statements or arguments for the purpose of misleading and prejudicing the jury; and if he does so, such misconduct, if properly preserved in the record and assigned here, will cause a reversal of the judgment procured."

In that case no relief was given at the first hearing, but there was a rehearing, and a rather elegant criticism of the conduct of counsel for the plaintiff was placed in 55 Neb. 748. There this court said: "Had the court, in response to a proper objection, vigorously condemned the remarks of counsel, we think they would have left no prejudicial impression on the minds of the jury. By prompt action the defendant's counsel might have obtained an effective antidote for the poison in Shaffer's speech; but he failed to act, and is, therefore, not in an attitude to have his complaint now considered. We do not, however, wish to be understood as holding that a rebuke from the court, or even a complete retraction by the offending counsel, is in all cases of this kind a sovereign remedy. If the transgression be flagrant— if the offensive remark has stricken deep, and is of such a character that neither rebuke nor retraction can entirely destroy its sinister influence—a new trial

should be promptly awarded, regardless of the want of an objection and exception." The true rule could not possibly be more aptly expressed than in the language above quoted. It is certainly true that, when counsel winces and dodges under the blows of his adversary, the jury takes sides, and they are not for the man who runs away or who claims protection. The people like a fighter and they despise a coward. If the counsel who is attacked calls on the court for help, then the jury are likely to say, "Well, he knew where the shoe pinched, didn't he?" or, "He got it in the neck and hollered, 'Ouch'," or, "He knew when he was licked." The number of expressions that might be used by the jury under these circumstances is simply unlimited. The only adequate remedy is to give counsel on the other side "hot stuff." When it is apparent that the verdict rendered by the jury is wrong, then it becomes the duty of a reviewing court to give a new trial or to cut down the judgment to reasonable limits. That is what was done in the case last cited. This court apparently did not like to establish a rule that it would in such case set aside the verdict and grant a new trial, but it reversed the judgment unless the plaintiff would remit $2,500. The court said: "In view of the condition of the record, we are not warranted in reversing the judgment on account of misconduct of counsel; but we have concluded, after a through consideration of the evidence, that the damages are excessive, and must have been assessed while the jury were yet under the sway of counsel's superheated eloquence." The particular member of this court who wrote the language quoted knew what he was about, and this court seems to have fully indorsed what he did, because there is no dissent.

In *Ashland Land & Live Stock Co. v. May,* 51 Neb. 474, counsel for the plaintiff said to defendant's counsel: "He (referring to defendant's witness then on the stand) has been to you; of course, you fixed him; you have to depend upon fixing witnesses." The trial judge appears

in that case, as stated in the opinion, to have some of the time sustained the objections of counsel for the defendant, but at other times he failed to make any ruling, nor did he rebuke counsel for the plaintiff. This court reversed the judgment of the district court and said: "The misconduct of counsel for the prevailing party in this case could not have been otherwise than prejudicial to the defendant, especially in view of the conflicting character of the evidence."

In *Stratton v. Nye,* 45 Neb. 619, counsel for the defendant in his opening statement to the jury said: "W. A. Nye in 1889 was the owner of one-half interest in a corn sheller, in connection with Robert Gilchrist; that some time in July of that year he sold that half interest to Mr. Gilchrist, and after this he came to town and mortgaged the same half interest which he had sold to Mr. Gilchrist." In that case CHIEF JUSTICE NORVAL delivered the opinion of this court. He said in the opinion: "In such opening statement it is the duty of counsel to refrain from rehearsing irrelevant and prejudicial matters or facts which are foreign to the issues; and, where counsel abuses the privilege of advocacy in his opening by rehearsing irrelevant and prejudicial matters, the court should, especially when objection is made, reprove the practice in the hearing of the jury, and as far as possible remedy the mischief by instructing the jury to disregard the prejudicial statement. The trial judge must necessarily have a broad discretion in such matters; but, if counsel abuse their privilege, or the trial court its discretion, to the prejudice of a party, it is sufficient ground for a reversal of the case."

In *Hennies v. Vogel,* 87 Ill. 242, the supreme court said: "It is the duty of the circuit court, in conducting trials by jury, to restrain every effort of the parties to bring before the jury matters which are foreign to the issues to be tried, and especially and scrupulously to exclude all such matter when the same has a tendency to excite the prejudices of the jury against a party to the

issue." In that case there was a petition for a re-hearing, "on the consideration of which, we became satisfied that the damages found by the jury were excessive, and a rehearing was accordingly granted." Then the court went over the whole case on the rehearing. It was said PER CURIAM: "The majority are satisfied that they (the damages) are out of all proportion to the injury inflicted." The judgment was reversed and the cause remanded.

In *Tucker v. Henniker,* 41 N. H. 317, it was said in the body of the opinion: "No fault of the opposite counsel could justify a repetition of that fault by his opponent. The jury are sworn to render a true verdict in every case, according to law and the evidence given them, and the well-established rule of judicial proceedings confines the arguments of counsel before them to comments upon and suggestions in relation to that law and evidence. * * * It is irregular and illegal for counsel to comment upon facts not proved before the jury as true, and not legally competent and admissible as evidence." The verdict was set aside, and a new trial granted.

In *Martin v. State,* 63 Miss. 505, the prosecuting attorney said: "Martin is a man of bad, desperate, and dangerous character. But I am not afraid to denounce the butcher boy, althought I may, on returning to my home, find it in ashes over the heads of my defenseless wife and children." The court said: "The prisoner was on trial for a specific offense, and it was his right under the law to be tried for that offense, upon competent evidence confined to that issue. We are of opinion that the counsel for the prosecution in the matter above quoted, passed the bounds of legitimate advocacy, and that, under the circumstances of the case, the prisoner may have been, and probably was, thereby injured. Such declarations uttered by distinguished counsel, of high moral and social standing, in any case, would inevitably tend to prejudice the jury against the prisoner." The

judgment was reversed because of the argument of counsel.

In *Rudolph v. Landwerlen,* 92 Ind. 34, counsel for the plaintiff said in his closing argument: "It is in evidence that this defendant is a Catholic priest, and all of his witnesses are members of his church, and it is a strange coincidence that they track the evidence of the defendant with that minuteness and precision in the use of words and language that cannot be accounted for, except, as shown by the evidence, they heard the defendant from the pulpit detail his version of the case, and they can come here and swear to his version of the case, and the defendant can absolve them from the sin. If it is one of the doctrines of the Catholic church that one of the members may swear falsely as a witness, and the priest can forgive him his sin for such false swearing, so as to absolve him from all moral guilt, it is the privilege and duty of the jury" to consider this. The court sustained an objection, and the same counsel proceeded: "The defendant is here, and, if it is not a doctrine of the Catholic church, let him stand up here and deny it, and that shall be the end of it." The trial court refused a new trial, but a new trial was granted by the supreme court, whereupon there was a petition for a rehearing. It was overruled, and the court said: "We adhere to the conclusions reached in our original opinion."

In *Coble v. Coble,* 79 N. Car. 589, counsel for the plaintiff said: "That no man who had lived in defendant's neighborhood could have anything but a bad character; that defendant polluted everything near him, or that he touched; that he was like the upas tree shedding pestilence and corruption all around him." There was a new trial.

I have been unable to find in the bill of exceptions any sort of justification of the remarks made by counsel for the plaintiff. It is said in the majority opinion: "The plaintiff's attorney, among other things, urges

that his remarks complained of were induced by the prior remarks to the jury by the defendant's attorney." There is nothing said in the record or in the opinion concerning the substance of these "prior remarks." It is further said in the opinion: "These respective attorneys are, and long have been, among the leading and influential members of the bar of this state, and, from the view that we take of this record, we are fortunate in not being required to comment upon the propriety of the language complained of." I quite agree with the majority opinion touching the fact that the respective attorneys are "among the leading and influential members of the bar of this state," but, notwithstanding that fact, I do not see how I can conscientiously avoid making this dissent. The high social and professional standing of these gentlemen seems to the writer to have nothing to do with the subject.

One may readily understand how statements like the foregoing, which, for lack of space are not set forth in their entirety, might influence a jury, although not in any way material to the case on trial, and wholly unsupported by the evidence. This is especially true when the counsel using the language here employed is a man of fine standing in the community, of sterling integrity, of much more than average scholarship, and possesses in addition a pleasing personality along with much charm of manner and rare powers of expression, both literary and legal. The majority opinion treats the offense mildly and imposes no punishment by compelling the plaintiff through the use of a remittitur to reduce the judgment to reasonable limits. A reduction of one-third might not be out of the way in view of the pictures drawn and the seductive, impassioned, and prejudicial language used. Then other counsel by the rule which the majority opinion establishes, in other cases yet to be tried, are invited to draw pictures, on one side, of wealth, and, on the other side, of penury. In the next case that may be tried against a railroad com-

pany for damages because of personal injuries this case will be referred to. It is cases of this kind where the courts are called upon to preserve the rights of litigants, however unpleasant it may be to punish counsel through their clients in the way suggested. The high standing of a lawyer socially and professionally, and the fact of his exceeding good fellowship, but emphasizes the necessity for a proper observance of rules which should not be broken.

I have no attempted criticism to make of the plaintiff's right of recovery if the case had been fairly tried under proper instructions. But where this court permits counsel in the court below, while making his closing address to the jury and after he is safe from reply, to discuss the humble origin of counsel for the defendant, the small fees they received early in their professional life, the supposed fees that they receive now, the fact that the manager of the defendant company was once a brakeman and its president once a telegraph operator, and that each now receives an immense salary, and counsel then closes with a peroration touching a millionaire never connected with the defendant railroad company and not in the railroad business for half a lifetime, and all this is done without criticism or condemnation upon the part of this court, which says it may be done again under like circumstances, I feel that I am compelled to protest. The district court should have stopped the plaintiff's counsel at once, whatever the charm of his voice, whatever his wit or his humor, however graphic the pictures he drew, and however high his standing as a citizen and at the bar. As defendant's case was damaged, there should be a new trial.

I do not consider that the record in any way justifies the second paragraph in the syllabus.

As to the fourth paragraph in said syllabus, it does not attempt to state in what way the instruction requested by defendant's counsel was deficient, and if no fact, or no absence of testimony concerning supposed

facts are referred to, then there is nothing to consider. It seems to the writer that the paragraph should be cut out.