## WOMAN THROWN UPON PAVEMENT BY LURCH OF CAR.

Common Pleas Court of Hamilton County.

MAUDE McKIM v. THE CINCINNATI TRACTION COMPANY.

Decided, April, 1919.

*Negligence—Alighting Street Car Passenger is Thrown and Injured— Complaint of Improper Argument to Jury—Exceptions and Objections Distinguished—Alleged Excessive Verdict—Competency of Evidence.*

1. Where counsel "excepts" to the course of argument to the jury pursued by his opponent, but does not in terms "object" thereto, and upon being questioned by the court stated that he did not desire a ruling on his exception, the error to which the exception was directed if any there be, is not saved, and it is too late after an adverse verdict to ask, on motion for a new trial, for a ruling on the exception.

2. An incompetent and immaterial answer, which has been ruled out, is not rendered competent by making it a part of the answer to a subsequent question to which a proper answer was possible, where there was notice of the objection and the feature of the answer to which the objection was directed has not been eliminated but the substantial portion is found in answers to other questions.

3. A verdict of $7,583 in favor of a student nurse, twenty-five years of age and in perfect health, who was a hospital inmate for three months in consequence of injuries to her head and spine, and who continued thereafter to suffer greatly and was compelled to undergo an operation which rendered her incapable of bearing children and whose impaired health is likely to be permanent, will not be set aside as excessive or as indicating passion and prejudice on the part of the jury due to the use by her attorney, in argument, of the expression "poor girl" and the placing of his hand in a familiar way on the knee of one of the jurors as he was seeking to impress them with the seriousness of the injuries suffered.

*S. A. Anderson* and *Thos. L. Michie,* for plaintiff.
*Sherman T. McPherson,* for defendant.

MATTHEWS, J.

The jury in this case returned a verdict in favor of the plaintiff, and the cause now comes before the court upon a motion of the defendant for a new trial  Various grounds for a new trial are set forth in the motion, but the only ones urged upon the court in oral argument or by brief, are:

1.   Misconduct of plaintiff's counsel, Anderson, in his argument to the jury.

2.   That the court erred in refusing to permit certain questions and answers in the deposition of Dr. Gillespie to be read to the jury.

3.   That the verdict was excessive, appearing to have been given under the influence of passion and prejudice.

### FIRST GROUND.

In considering this ground for a new trial, the court is confronted with the contention by the plaintiff that the record shows the question of misconduct in argument was not properly raised and saved at the trial.   During the argument of plaintiff's counsel, Mr. Anderson, counsel for defendant on three occasions interrupted the argument and made this statement the first time: "I want to except to that statement, your Honor, it is not correct," and repeated the substance of this "exception" the other two times.   At the close of Mr. Anderson's argument this colloquy took place between counsel for the defendant and the court:

"Mr. McPherson:   May I have an exception to that last statement, your Honor, wherein counsel was appealing to the passion and prejudice of the jury, and may it please your Honor, I want to take another exception."

"The Court:   I understand you are not asking me to make any ruling?"

"Mr. McPherson:   No, I want to take exception to the action of counsel patting a juror on the knees and making that personal appeal to a juror."

The question presented is whether the act of excepting to statements of counsel in argument to the jury, coupled with an ex-

press disclaimer of any request for a ruling by the trial Judge either in withdrawing a juror and continuing the case or in warning offending counsel and instructing the jury to disregard the improper statement, forms a sufficient basis for a claim of error justifying the setting aside of the verdict thereafter rendered in the case.

In the case of *Hayes* v. *Smith*, 62 Ohio State, 161, the court held that,

"It is a duty of the trial court which is not merely discretionary, when counsel grossly abuses his privilege to the manifest prejudice of the opposite party, to interpose and admonish the offending counsel and to instruct the jury in regard thereto; and if it fail to do so, it is ground for a new trial."

And also that,

"The form in which an objection to such an abuse of privilege is brought to the notice of the trial court is not material; and when the record shows that the opposing counsel addressed his objections and exceptions directly to the court, and the full record being before the reviewing court, *it does not appear that the trial court took any notice thereof, nor that it acted thereon, it will be presumed* to have refused to rule out the objectionable matter, and such failure and refusal will be ground for reversal."

In the case just cited the record shows that during the argument in question opposing counsel addressed the court and made his "objection" and then took his "exception." The record shows that the trial court took no notice of the objection in any way.

In the case at bar, defendant's counsel at no point during the argument of Mr. Anderson interposed an "objection" in that term. What he did was to lodge an "exception." The trial court did not understand that counsel was asking for any ruling of any sort, and when Mr. Anderson closed his argument and defendant's counsel again lodged an "exception," the court asked him whether he was asking the court to make any ruling and he responded in the negative.

The distinction between an "objection" and an "exception" is well settled and is stated in the case of *Warder, Bushnell & Glessner Co.* v. *Jacobs,* 58 Ohio St., 77, at page 81, in this language:

"From the record before us it simply appears, that these observations were made by counsel for the plaintiff to the jury, and that counsel for the defendants then and there "objected and excepted." From this we readily infer that counsel "objected" to the remarks of the opposing counsel, as he had an undoubted right to do. But to what did he "except." An exception is not to the act of a party but to that of a court in ruling on an objection. What the court did in this matter is not disclosed by the record."

This state of the record, it seems to the court, entirely distinguishes it from the case of *Hayes* v. *Smith.* The case at bar differs from that case in that no "objection" was interposed at any time to the argument. An "exception" alone was lodged, and contrary to the inaction of the court in *Hayes* v. *Smith, supra* the trial court in the case at bar did take notice of the lodging of the exception by asking defendant's counsel whether he was requesting this court to make any ruling. Upon receiving an answer in the negative the court made no ruling at that time, but did cover the subject later in the general charge.

The subject of the manner in which error based upon improper remarks to a jury should be saved has received the attention of the courts in practically all jurisdictions. In the case of *Spahn* v. *People's Railway Co.,* 92 Atl., 727 (Del.) plaintiff's counsel was guilty of improper statements in argument in referring to an injury to his own knee and to the pain and suffering to him therefrom. No "objection" was made at the time, and the reviewing court held therefore, that it was no ground for reversal.

In the case of *Pascoe* v. *Nelson et al.,* 158 Pac. 317, (Montana) decided in 1916, it was charged that plaintiff's counsel in explaining his failure to call certain witnesses, said:

"That defendant Nelson had 'seen the doctors first,' and had wrongfully induced them not to testify; that Nelson and Peder-

son had more money than the plaintiff; that the jurors by their verdict should make the plaintiff a Christmas present; and, finally, that the attorney repeatedly impressed upon the jury the fact that the liability of the defendants, Nelson & Pederson, was insured by an indemnity company, which company was really the party defending and the one ultimately liable for any judgment which plaintiff might recover."

In discussing this argument and the manner of saving the exception thereto the court, at page 318, says:

"The same judge who tried the cause heard the argument, who was appealed to by defendants and who admonished plaintiff's counsel, denied a new trial for the reason that the defendants had not requested the court to instruct the jury to disregard counsel's remarks. To what extent, if at all, the trial court found the charges made against plaintiff's counsel to be true, we are unable to determine. The burden was upon the moving party, the defendants, and we can not say from the printed record that they sustained it. Assuming, however, that counsel made the remarks attributed to him, a proper admonition to the jury to diregard them ought to have been sufficient. So long as the jury system is in vogue courts must assume that jurors possess sufficient intelligence and force of character to discharge their duty when properly directed. Appellants failed to ask the trial court to admonish the jury, and for that reason the order denying their motion for a new trial should be affirmed."

In the case of *Lunsford* v. *Hatfield Coal Co.,* 178 S. W., 1166 (Kentucky) defendant's counsel made improper remarks in argument to the jury to which no "objection" was made at the time, and discussing this subject at page 1167, the court says:

"Whatever may have been the effect of this occurrence, if any, upon the verdict, it was the duty of the party desiring to get the benefit of it to make the question at the time, and not wait until a verdict was rendered against him and then make it. A party may not take his chances upon the effect of such an occurrence during a trial, and thereafter, when the jury has returned a verdict against him, get the benefit of it. Not only did appellant make the question too late, but it is questionable whether the occurrence referred to was not much more apt to have prejudiced the defendant before the jury than the plaintiff."

Other cases holding that where no objection was made at the time, the error of improper remarks can not be taken advantage of later on, are: *Kriss* v. *Union Pacific R. R. Co.*, 100 Neb., 801; *Mulcahy,* etc., v. *National Surety Co.*, 153 N. Y. Sup., 370; *Schwall* v. *Quitman Oil Co.*, 94 S. E., 64 (Georgia); *Whaley* v. *Vannatta*, 77 Ark., 238; and other cases in the annotation to the text in Second Ruling Case Law, at page 438.

The conclusion to which the court has arrived on this point is that inasmuch as defendant's counsel did not in terms "object," but only "excepted," and inasmuch as the court took notice of his "exception," and upon being questioned by the court he stated that he wanted no ruling from the court upon his exception, (that is, in effect saying that he did not want the court to construe the "exception" as an "objection" and rule upon it) that the error, if any, has not been properly saved by the defendant, and that it is too late after an adverse verdict has been rendered to ask a ruling for the first time upon the question on a motion to set aside the verdict. Whether the court should disturb this verdict notwithstanding the state of the record is discussed in connection with the third ground upon which a new trial is asked.

As to the exclusion of answers in the deposition of Dr. Gillespie who examined the plaintiff shortly after the accident occurred, out of which this action arose. In this deposition offered by defendant, this question was asked:

"Q. What, if anything, did you say to the people who controlled the hospital, in relation to her injury?"

There was an objection to this question and the court sustained the objection on the ground that it was clearly immaterial and incompetent. The answer in the deposition, which was not read to the jury was:

"I told them that she was not injured in my judgment, and that I did not like her conduct in the case; that I was satisfied that no great injury had been inflicted."

The deposition shows that the plaintiff, at the time the deposi-

tion was taken, objected to the question when asked, and moved to strike out the answer.

The next question in the deposition was:

"Did you ever have a conversation with the plaintiff in which you said that to her?"

and the answer was:

"Yes, sir; yes sir, I did, more than once."

Counsel for the defendant asked the court to permit him to read the answer to the first question in connection with the answer to the second question, and the court refused the request.

Upon reflection, the court is still of the opinion that its ruling was correct in this respect,—for these reasons:

1. Plaintiff's counsel duly objected to the first question at the time the deposition was taken, and duly moved to strike out the answer thereto at the time it was given, and the objection and motion were noted in the deposition. The defendant, therefore, was duly advised as to the objection at the time.

2. To have permitted the answer to the first question to be read in conjunction with the answer to the second question would not only have permitted an answer that was unresponsive, but also would have permitted to have gone to the jury the statement contained in his answer that Dr. Gillespie had made to third persons. The only effect it would have had would have been to show that Dr. Gillespie had made these same statements to third persons, and it is clear that a witness' testimony can not be strengthened by showing that he had made unsworn statements to the same effect to other persons prior to testifying.

3. All the substantial part of this answer was contained in answers to other questions that were permitted to be read to the jury. Dr. Gillespie was asked:

"What, if anything, did you say to her in relation to that," and he answered:

"I told her she was not much hurt and that she should control herself and get the idea out of her head, and that there wasn't any injury."

This answer and question was allowed to be read to the jury.

Third Ground. That the verdict is excessive and was rendered under the influence of passion and prejudice.

Inasmuch as the analysis of the evidence necessary in the discussion of this claim of error is equally applicable to the defendant's claim that the verdict is against the weight of the evidence and that counsel for plaintiff was guilty of misconduct in argument, of such a character as to justify the court in granting a new trial, nothwithstanding the fact that the error was not reserved, the court will discuss these three claims together.

The plaintiff testified that she was in the act of alighting from one of the defendant's street cars that had come to a stop on her signal, at a regular stopping place; that she had one foot on the floor of the body of the car and the other on the running-board, when the car gave a sudden lurch which threw her to the street, whereby her head and back were injured. She was corroborated in this testimony by Miss Troup, who was in company with her at the time, and was arranging to leave the car after plaintiff.

The defendant produced no witness to testify as to the accident. The plaintiff notified the defendant by letter the next day after the accident, and by stipulation of counsel it was agreed that the defendant had inquired of its motormen and conductors following the accident and that none of them knew of any accident having occurred to any one at that time and place. The decision of the question of whether any such accident occurred depended therefore entirely upon the credibility of the plaintiff and the witness, Miss Troup. The question of credibility was left to the jury and the jury manifestly found that they were worthy of credit, and inasmuch as there was no impeaching evidence of any sort, the court would not be justified in disturbing the verdict for the plaintiff by substituting its opinion, if it had any, contrary to that of the jury on the credibility of these witnesses.

This leaves as the only question in the case, whether the jury, actuated by passion and prejudice, rendered a verdict for an excessive amount.

In approaching this question, the court takes for its guidance

the rule stated by Judge Thurman in the case of *McGatrick* v. *Wason*, 4 Ohio St., 566, at 575, as follows:

"Should we disturb this finding? If it is clearly wrong we must do so; if we only doubt its correctness, we must let it alone. In *French* v. *Millard*, 2 Ohio St., 53, this court said: 'We are not satisfied that the verdict of the jury was right. But this is not enough. A mere difference of opinion between the court and the jury, does not warrant the former in setting aside the finding of the latter. That would be, in effect, to abolish the institution of juries, and substitute the court to try all questions of fact. It must be clear that the jury has erred, before a new trial will be granted, on the ground that the verdict is against the weight of the evidence.' Now, if this is the rule, as it undoubtedly is, even in the court where a cause is tried, and before whom the witnesses appeared and testified, *a fortiori*, ought it to be the rule, when another court decides the motion for a new trial, with no other knowledge of the facts than is derived through the imperfect medium of a written statement."

The plaintiff testified that at the time of her injury she was a student nurse about twenty-five years of age; that her health had been perfect to that time; that as a result of this accident her head and back were injured, she was confined to the hospital for practically three months, and since the accident, had suffered great physical pain, including headaches, and that she was still suffering at the time of trial; that prior to this accident she had not suffered at her menstrual periods, but since then she had had constant trouble in that respect; and that in February, 1918, an operation was performed upon her to relieve her condition.

The plaintiff was corroborated as to her prior good health by Miss Troup, Dr. Kerraker and Dr. Onderdonk.

Dr. Kerraker performed the operation upon her in February, 1918, and he testified that at that time she had inflammation of the uterus and an abcess in the cul-de-sac-back of the uterus, and that he removed both ovaries and right tube. He testified that in his opinion the inflammation of the uterus and the abcess in the cul-de-sac back of it were the result of the blow on the back, and that also the condition of the tubes could have resulted there-

from. He testified that a certain condition of the ovaries, which he described as cystic, did not result from the blow on the back. He further testified that as a result of the operation which he performed, it would be almost impossible for the plaintiff to become pregnant.

Dr. Onderdonk, who treated the plaintiff in conjunction with Dr. Kerraker, over a considerable period, and who knew her prior to the date of this accident, testified that in his opinion her changed physical condition was the result of the injury to her head, back and spine, and that the condition would be permanent.

Dr. Pope, who testified that he had been practicing medicine for twenty-seven years, was a graduate of the University of Louisville, and a post-graduate of other schools in this country and Europe, and was a specialist on nervous and chronic diseases and had been operating a private sanitarium for twenty-three years, said that he first examined the plaintiff in September, 1916, and at that time found her extremely nervous, with a very weak and rapid pulse, prostrated, with the muscles of the nape of the neck and back of the head rigid, an extremely tender spine, especially in that part at the junction of the lower ribs and just back of the hips; that he found the joint between the large hip bone on the right side and the lower part of the spine dislocated, swollen, and very tender; that he found the female organs displaced downward, the right ovary enlarged and tender and the right tube connecting the ovary with the womb enlarged and inflamed; that a week after the first examination he made a second examination in conjunction with Dr. Kerraker, and found practically the same condition to exist; that in November, 1917, he again examined her and he described the symptoms which he found, showing that her condition had become worse, and particularly that the female organs were in a much worse condition. He testified that in his opinion all these conditions resulted from the injury which she had received to her back and head when falling from the street car.

There was additional testimony of a circumstantial and corroborative character offered by the plaintiff.

Immediately after the accident, the plaintiff was examined by Dr. Gillespie, and his testimony offered by the defendant, was that while the plaintiff complained greatly of pain and suffering, he was able to discover no objective injuries of any sort.

During the progress of the trial, the defendant had the plaintiff examined by Dr. Bonifield, who testified that in his opinion the condition of the ovaries was not attributable to a blow on the back, and that the plaintiff's pain and suffering, which he recognized to exist at the time of his examination, was the result of adhesions caused by the operation and not by the accident.

All this evidence was submitted to the jury and it awarded a verdict in favor of the plaintiff for $7,583. In arrriving at the result the jury manifestly placed faith and credit in the testimony of the plaintiff's witnesses. The credit of none of these witnesses was impeached, and the court can not say that the jury was wrong in its conclusion in this regard.

It is contended, however, that the misconduct of Mr. Anderson in argument was such that the court should grant a new trial in the interest of justice, notwithstanding the record is such that a reviewing court could not pass upon the question of his alleged misconduct. It is contended that this motion is addressed to the trial court and that it has the power to grant a new trial and correct any manifest injustice that has been done.

This, of course, is correct, but this power of the trial court can be rightfully exercised only in accordance with established legal principles. It is not a power to be exercised arbitrarily. Unless the court can say that the error complained of not only exists, but that it is prejudicial to a substantial degree and frustrates the ends of substantial justice, it is the duty of the court to disregard it.

Examining Mr. Anderson's argument, we find that the first claim of misconduct is in his use of the expression, "poor girl," in referring to the plaintiff. At the time he used this expression he was addressing his argument to the opportunity of the defendant to disprove any statements made by the plaintiff. It was in evidence that the plaintiff had notified the defendant on the day

following the accident, and that on various occasions the defendant's claim agents had called upon her at one place or another. In discussing this situation Mr. Anderson said:

"But you could have all this time—three years—your claim agents were camping on her trail in a distant city, or her home; calling her to her front door to talk to her; you knew whether she had been at work or not. I dare say now that you have known almost every step she has made, almost every dollar that poor girl has earned you have known of it."

It was also in evidence that the plaintiff had become a graduate nurse and had done some work; loss of wages and impaired earning capacity was in evidence, and in the light of this evidence, the court can not say there was any impropriety in the language used. The characterization of the plaintiff as a "poor girl" does not seem to the court to refer primarily to her poverty, if it existed, but rather to the condition in which she was as the result of the physical injuries claimed to have been inflicted upon her.

Mr. Anderson then passed from that particular subject of comment and commented on various subjects, and finally came to the discussion of the amount of compensation which should be awarded the plaintiff, and in doing so, used this language:

"You can not give her enough money to pay her for her suffering. You can bring the entire railway company in here, you can bring the bonds of the railway company in here, if you had it you can bring all the rolling stock of the railway company in here, you can bring its magnificent valuable franchise in here, and you can lay them all down at this girl's feet and say, take it, take it, and she will say to you, only give me back my good health * * * . Why she wouldn't want it. Her young life has been wrecked," etc.

It was admitted in the pleadings that the defendant was a common carrier of passengers and operated cars over Reading road in, Cincinnati. It necessarily follows that it had a franchise to do so. It does not seem to the court that it was improper for the

plaintiff's counsel in giving his estimate of the amount of damage which the plaintiff should be awarded, to refer to the property of the defendant.

It was in evidence that the defendant was a railway company; that it had rolling stock; that it operated its cars over the public streets; and for counsel to say that the value of all these things was not sufficient to compensate the plaintiff for her injuries seems to the court to be a legitimate but extravagant statement of the plaintiff's right of compensation. She was limited by the prayer of her petition to $30,000.

In referring to Dr. Pope, Mr. Anderson in arguing that he should be believed, placed his argument in the form of his personal opinion of the kind of a man Dr. Pope is. In other words, he said:

"I want to stand here and tell you, gentlemen of the jury, that there is not a higher class man in the state of Kentucky, in the state of Ohio, or in the United States than Curran Pope, the great specialist of the city of Louisville.

Of course, it is outside the bounds of legitimate argument for counsel to testify as to his personal knowledge of the credibility of a witness. In this case, however, Dr. Pope stood unimpeached, and the uncontradicted evidence was that he had practiced medicine in Louisville for twenty-seven years, was a graduate of the University of Louisville and a post graduate of other schools in this country and Europe, and was a specialist in nervous and chronic diseases for twenty-three years. Now, with that as a basis, counsel for plaintiff would have been entirely within the bounds of legitimate argument to have called the jury's attention to the testimony as to Dr. Pope's position and qualifications and to have argued that the unimpeached testimony of such a specialist was trustworthy and should be believed.

It seems to the court that no prejudice resulted to the defendant from the mode of presenting the qualifications of Dr. Pope to the jury, and that on this point this case falls within the rule stated in the companion case to *Driscoll* v. *Cincinnati Traction*

*Co.,* 88 Ohio St., 150 at 155. In that case the prosecuting attorney, in his closing argument, stated that shortly before the trial was entered upon, counsel for the accused were in the neighborhood interviewing persons who were supposed to be informed as to his presence in that neighborhood at the time of the assault with a view of calling them as witnesses. There was an objection to this line of argument, and in discussing it the court said, at page 155;·

"There was no testimony in the case whatever to show that they took any improper steps to secure testimony. In the closing argument on behalf of the state to the jury, as we gather from a record that does not seem to have been very carefully prepared, counsel for the state made some insinuations against the propriety of the conduct of adverse counsel in that behalf. He was engaged at the time in pressing upon the attention of the jury the efficacy of suggestion in starting the belief that one has observed what in fact he has not observed and that he remembers what in fact he does not remember. The psychological law suggested is within the observation of all of us and comment upon it was strictly within the function of counsel for the state. To the proper effect of legitimate comment upon that subject no force would be added by insinuations against the propriety of the conduct of counsel for the accused, and the misconduct appears to be not only an offense against the decorous administration of justice, but without special prejudice to the accused."

So, in this case it appears to the court that the mode adopted in bringing to the attention of the jury the qualifications and credibility of Dr. Pope, constituted an offense against the decorous administration of justice, but without special prejudice to the defendant. Placing Dr. Pope's qualifications and credibility before the jury in the form of the personal opinion of counsel, rather than in the form of a deduction or inference from undisputed evidence did not, in the opinion of the court, add any force to the argument.

It was particularly urged, however, that counsel was guilty of misconduct in referring and emphasizing the fact that plaintiff had been deprived of her ability to become a mother. The

claim is that there was no evidence to serve as a predicate for such an argument and that the size of the verdict shows that the jury was influenced by it. The court, however, is not prepared to say that there is no evidence from which a legitimate conclusion could be drawn, that the plaintiff was deprived of the privilege of motherhood as a result of this accident. The evidence is that her health prior to the accident was good; that she had no trouble whatever at her menstrual periods; that immediately after the accident the female organs were found to be displaced, inflamed and swollen, and that from that time on she had constant trouble in that regard. The testimony of Dr. Pope is that the condition of the ovaries, resulting in their removal by the operation, was attributable to these injuries. Dr. Kerraker testified that because of the removal of certain female organs, childbearing by plaintiff was made practically impossible.

Viewing the testimony in this light, the court finds no impropriety in counsel's argument in calling the attention of the jury to these facts. The injuries other than those which deprived the plaintiff of the ability to become a mother, would have justified a verdict in a very substantial sum, and coupled with this additional injury it would be difficult to judicially declare a very much larger amount than that awarded in this case to be excessive. The court can not say the amount of this verdict is excessive.

In the general charge to the jury the court instructed it that the plaintiff was only entitled to such damages as were caused proximately by the defendant's negligence, and defined what the meaning of the term "proximate cause" was. At the close of the general charge defendant's counsel requested the court to charge further upon the question of the injury to the ovaries, for which the plaintiff might be entitled to recover, and the court responding to that request, charged the jury:

"If you find from the evidence that the disease of her ovaries was not caused by the accident, you can not award damages for any sickness, pain or suffering suffered by her on that account, and that same rule, gentlemen, applies to all the other injuries, sickness, pain and suffering that has been testified to in the case.

You must find first whether the sickness, injury, pain or suffering the plaintiff has suffered were the direct and proximate result of the accident, and then if they were, award such damages as will reasonably compensate her for the same. If they did not result proximately and directly from the accident, then plaintiff would not be entitled to recover on account thereof.''

The court had already charged the jury that it should not be influenced by passion, favoritism or prejudice for or against the plaintiff or the defendant, in this language:

''You are to consider the evidence impartially and fairly; analyze the evidence and determine where the greater weight of evidence rests, and be guided by that greater weight of the evidence in reaching a conclusion. If the greater weight favors the plaintiff, then your verdict should be for the plaintiff. If the plaintiff has not proven by the greater weight of all the evidence the issues of fact, then your verdict should be for the defendant.''

The trial of this case was conducted in an orderly and dispassionate manner. The argument made by Mr. Anderson was not accompanied by any disorder or conduct of an improper character. The only criticism that could be made was and is as to the language used, and his placing his hand for an instant upon the knee of a juror, which act was not repeated, and the court finds under all the circumstances, that no prejudice resulted to the defendant by reason of any impropriety in the argument.

The court is of the opinion that a fair and impartial trial was given to the defendant, that no error prejudicial to it was committed, and its motion for a new trial is therefore overruled.